883 F.2d 468
 CSXT, INC., a Virginia corporation, Plaintiff-Appellee,
v.
James J. PITZ, Director of the Department of Transportation
of the State of Michigan, Norma J. Fleming, Administrator of
the Railroad Safety and Tariffs Division of the Department
of Transportation of the State of Michigan, and the
Department of Transportation of the State of Michigan,
Defendants-Appellants (88-1642),
and
The United Transportation Union, Intervening
Defendant-Appellant (88-1629).
 Nos. 88-1629, 88-1642.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 23, 1989.
Decided Aug. 22, 1989.
Rehearing and Rehearing En Banc Denied in No. 88-1629 Oct. 4, 1989.
 
 Sally J. Kircher, CSX Transp., Inc., Jacksonville, Fla., Patrick E. Hackett argued, Carol Hackett-Garagiola, Frasco, Hackett & Mills, Bloomfields Hills, Mich., for plaintiff-appellee.
 William Reid Ralls argued, Bruce H. Edwards, Ralls & Mackey, P.C., Lansing, Mich., for defendant-appellant.
 Before MERRITT and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 The defendants, James J. Pitz, Norma J. Fleming and Michigan Department of Transportation, and the intervening defendant, United Transportation Union, appeal on abstention grounds a District Court injunction restraining the Department from enforcing any state administrative action or rule requiring toilets in railroad locomotives. The injunction was issued on grounds that such a Michigan rule would be preempted by the Locomotive Boiler Inspection Act, 45 U.S.C. Secs. 22-43 (1976) and the Federal Railroad Safety Act of 1970, 45 U.S.C. Secs. 421-44 (1976). The District Court held that the preemption doctrine prohibits the state agency from conducting the contemplated proceeding.[1] The central problem raised by the appeal is whether abstention is appropriate in preemption cases. We conclude under the circumstances of this case that abstention is appropriate; and we, therefore, reverse the order of the District Court. CSXT, Inc. v. Pitz, 699 F.Supp. 127 (W.D.Mich.1988).
 
 I.
 
 2
 The facts are not in dispute. The plaintiff, CSXT, is an interstate railroad system operating in Michigan. About one-third of CSXT's locomotives are not equipped with toilets. The defendant, Michigan Department of Transportation, has a general rule requiring that all railroads have "adequate toilet facilities" for the health of their employees. Mich.Adm.Code Rule 460.1473(a).[2]
 
 
 3
 The intervening defendant-appellant, United Transportation Union, is an international union representing CSXT train crews working in Michigan. After receiving reports that crew members were being asked to work on CSXT locomotives that did not provide toilet facilities, the Union filed a complaint with the Michigan Department of Transportation. The complaint charged CSXT with violating the Michigan rule requiring railroads to have "adequate toilet facilities."
 
 
 4
 The agency scheduled a hearing before an administrative law judge after CSXT had filed a motion to stay the administrative proceedings. CSXT then filed a suit for injunctive and declaratory relief in federal court. After a hearing, the ALJ denied CSXT's motion for stay. She stated that she doubted that the agency had the authority to entertain the constitutional claims but cited Michigan authority holding that although Michigan administrative agencies ordinarily do not entertain constitutional claims, such claims may be raised in court on review of the agency's decision. Joint Appendix at 107. Additionally, the ALJ said that the sanitary regulations at issue were well within the police powers of the state. She refused to hold that the federal statutes relied upon by CSXT were intended "to prohibit state regulation in an area so basic to public health." Id. at 108.
 
 
 5
 The federal District Court granted the Union's motion to intervene on February 4, 1988, and on the same date entered a preliminary injunction restraining the state agency from enforcing its rule and restraining the agency from conducting the scheduled administrative proceedings until the District Court ruled on CSXT's motion for summary judgment. On February 10, 1988, the Union filed a motion to abstain. The District Court did not expressly consider or rule on the Union's abstention motion. The court found the state rule as applied to locomotives to be preempted by federal law and, therefore, without oral argument granted CSXT's summary judgment motion and issued a permanent injunction.
 
 
 6
 This appeal requires us to answer two questions. First, does the fact that this case raises preemption rather than other types of constitutional issues require us to modify the classic abstention analysis? And second, once the proper mode of analysis is determined, does it require abstention in this case?
 
 II.
 
 7
 The first question presented is whether the fact that this case is a preemption case, rather than another type of federal question case, should alter the way in which we view the abstention question. We conclude that it should not.
 
 
 8
 Two federal statutes are claimed to preempt the Michigan regulation. The Federal Boiler Inspection Act, 45 U.S.C. Secs. 22-43 (1976), first adopted in 1911, lists certain equipment required for locomotives and railroad cars. Enforcement of the act is by civil penalty ("not less than $250 and not more than $2500") assessed by the Secretary of Transportation, which may be collected by suit in federal court. Id. at Sec. 34. The Act does not prohibit concurrent state regulation or purport to occupy the field of railroad negotiation. The Railroad Safety Act, 45 U.S.C. Secs. 421-44 (1976), adopted in 1970, is broader. It allows the Secretary to "prescribe ... appropriate rules ... for all areas of railroad safety," including rules concerning equipment and operating procedures. Id. at Sec. 431(a). The Act allows limited concurrent state regulation.[3] The Act also provides for a similar but more elaborate system of enforcement through the assessment and collection of civil penalties. Id. at Sec. 436. The Secretary has not prescribed rules directly governing locomotive toilets, but CSXT argues that the Secretary has adopted general rules "covering the subject matter" and, therefore, has preempted Michigan law.
 
 
 9
 The Supreme Court in New Orleans Public Service, Inc. v. Council of City of New Orleans, --- U.S. ----, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (holding federal abstention not appropriate in favor of state administrative proceedings which are legislative in character), reversing 798 F.2d 858 (5th Cir.1986), has recently rejected the argument that the presence of a preemption question bars a court from applying Younger abstention. The Court rejected NOPSI's contention that a district court presented with a preemption-based request for equitable relief was a priori divested of its power to abstain.[4]
 
 
 10
 The recent ruling in NOPSI casts doubt on the holding of the Eighth Circuit in Middle South Energy, Inc. v. Arkansas Public Service Comm'n, 772 F.2d 404, 417 (8th Cir.1985). There the Eighth Circuit declined to abstain in a nuclear power case in which it found that the Arkansas Public Service Commission was interfering with the jurisdiction of the Federal Energy Regulatory Commission. The state agency threatened to hold illegal certain purchase contracts between a large, multi-state, electric utility and its Arkansas subsidiary. The Arkansas agency apparently wanted to deter the state subsidiary from taking nuclear power from the parent, and the court suggested that such a state decision would have a serious effect on the parent's construction of a multi-billion dollar nuclear power plant. The basis of the Court's abstention ruling is not entirely clear, but it appears that the Court declined to abstain because it considered federal regulatory jurisdiction over the power contracts in question to be exclusively vested in the federal power agency. The Eighth Circuit did not discuss whether it considered the federal court's jurisdiction over the preemption issue to be exclusive or concurrent with the state court's.
 
 
 11
 The abstention issue in preemption cases should not turn on a determination concerning the location of exclusive regulatory jurisdiction in a federal or state agency. The state-federal regulatory jurisdictional issue usually turns, in one form or another, on whether the activity in question is characterized as intrastate or interstate. See, e.g., Federal Power Act, 16 U.S.C. Sec. 824(b)(1) (1976) (distinction stated as "transmission of electrical energy in interstate commerce" or "the sale of electrical energy at wholesale" versus "local distribution" or "the transmission of electrical energy in intrastate commerce"). Under such statutes, the regulatory jurisdiction is exclusively state if the activity is intrastate, and exclusively federal if interstate. Such determinations of regulatory jurisdiction are often highly fact-specific and address themselves in the first instance to the expertise of the administrative agencies charged with economic regulation of the particular industry. In such cases both Congress and the state legislature have delegated frontline authority to find facts and devise economic regulations to administrative bodies with specialized knowledge of the industries to be regulated. Ordinarily, it is not prudent for courts to interfere in the regulatory process before the facts are sorted out and the regulatory rule is defined and applied.
 
 
 12
 In the present case there is no grant of exclusive jurisdiction to federal courts to resolve federal railroad safety questions or preemption claims in this area of the law. State courts do not lack jurisdiction over railroad safety issues or preemption claims. State courts normally have concurrent jurisdiction of federal issues unless such jurisdiction is withdrawn by federal statute. Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478-79, 101 S.Ct. 2870, 2875-76, 69 L.Ed.2d 784 (1981); Chivas Products Ltd. v. Owen, 864 F.2d 1280, 1282-86 (6th Cir.1988).
 
 
 13
 Other policies support our holding that abstention cases involving preemption should not be treated differently than other abstention cases. We reject the oft-repeated assertion that the federal courts have "unique expertise" in adjudicating preemption claims because they are "comparatively more skilled at interpreting and applying federal law and are much more likely to correctly ascertain congressional intent." Note, The Preemption Dimension of Abstention, 89 Colum.L.Rev. 310, 322-23 (1989). State judges are not inferior to federal judges. They have the ability to interpret federal statutes, however complex. Though preemption is a constitutional issue, it is not of a different order of magnitude than due process, first amendment and other constitutional issues which often arise during the course of a state or federal administrative and judicial proceeding. To hold that a state court may decide federal constitutional issues generally but should not decide preemption issues makes little sense.
 
 
 14
 State courts frequently decide such issues. It may be argued that state judges are somewhat more inclined to read state regulatory jurisdiction more broadly than federal judges. Compare Michigan Gas Storage Co. v. Michigan Public Service Comm'n, 405 Mich. 376, 275 N.W.2d 457 (1979), in which the Michigan Supreme Court, after extensive analysis of the federal Natural Gas Act, concluded that the Act does not preempt state regulation of the securities of gas companies, with ANR Pipeline Co. v. Schneidewind, 801 F.2d 228 (6th Cir.1986), aff'd, 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988), reaching the opposite result. But see Natural Gas Pipeline Co. v. Illinois Commerce Comm'n, 33 Ill.2d 214, 210 N.E.2d 490 (1965), in which the Illinois Supreme Court held Illinois regulation of natural gas securities preempted by the Natural Gas Act. Even if it were true that state judges were less inclined to displace state regulatory jurisdiction than federal judges, this tendency is not a sufficient reason to modify the doctrine of abstention by substituting federal for state judges in cases raising preemption issues.
 
 
 15
 The Tennessee Court of Appeals recently decided a preemption issue under the Federal Railroad Safety Act similar to the one raised in the present case. The issue was whether the federal Act preempts state administrative proceedings enforcing a requirement concerning the construction of "walkways" in railroad switching yards. Judge Cantrell, after extensive analysis of the issue, concluded that Tennessee's walkways rule was not covered by a federal rule on the same subject matter and, therefore, was not preempted. Illinois Central Gulf Ry. Co. v. Tennessee Public Service Comm'n, 736 S.W.2d 112, 115 (Tenn.App.1987).
 
 
 16
 In fact, state courts are often in a better position to decide preemption issues because they would do so on review of an administrative decision finding the facts. The threshold determination of whether jurisdiction over an activity is exclusively federal or state or is concurrent is often highly fact-specific and often requires the specialized knowledge of the state administrative agency to which regulation of the activity has been delegated.
 
 
 17
 Moreover, even if we accepted the proposition that some state courts lacked the necessary expertise, the resulting harm--that a case could be decided incorrectly by a state court and be denied certiorari by the United States Supreme Court so that federal-court review of the incorrectly decided constitutional claim was precluded--is no greater than it is when a federal court incorrectly decides a case, and the United States Supreme Court declines review. If the federal decision to abstain and the state decision to assert jurisdiction were inappropriate, it may be that the doctrine of res judicata should not apply in full force to the state court judgment. See Key v. Wise, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981) (Brennan, J., dissenting from denial of certiorari ).
 
 
 18
 In summary, we do not see any reason to analyze abstention cases involving a preemption claim differently than other abstention cases. In particular, we do not agree that the decisive abstention question in preemption cases arising from pending state administrative proceedings is whether the regulatory authority over the particular activity in question is exclusively federal or exclusively state. A federal court need ask itself only two questions: whether the state court has concurrent judicial jurisdiction to decide the preemption question, and, if the answer to that question is "Yes," whether a federal court should abstain in favor of ongoing state proceedings originating in the state regulatory agency. There is no question in the present case that concurrent judicial jurisdiction exists. We, therefore, proceed to inquire whether abstention is appropriate.
 
 III.
 
 19
 Abstention pursuant to the judicially-crafted rule announced in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is appropriate only where a court can answer all three of the following questions in the affirmative:
 
 
 20
 [F]irst, do [the relevant state proceedings] ... constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.
 
 
 21
 Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). In the present case we answer affirmatively all three questions.
 
 
 22
 Is the administrative proceeding here an "ongoing state judicial proceeding?" Middlesex, 457 U.S. at 432, 102 S.Ct. at 2521. Under the Supreme Court's recent analysis in NOPSI, it clearly is. There the Court explained that an agency's proceeding will be characterized as judicial or legislative depending on the "nature of the final act" which it is designed to produce. NOPSI, 109 S.Ct. at 2519 (quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226-27, 29 S.Ct. 67, 69-70, 53 L.Ed. 150 (1908) (Holmes, J.)). Where the proceeding "investigates, declares and enforces liabilities as they stand on present and past facts and under laws supposed already to exist," it is judicial. Id. 109 S.Ct. at 2520 (quoting Prentis, 211 U.S. at 226, 29 S.Ct. at 69). We are faced with an administrative proceeding before the Michigan Department of Transportation in which the interpretation and application of a state rule requiring "adequate toilet facilities" are in question and in which the final result will be a determination whether CSXT is liable for a violation of this established rule. There is, thus, an ongoing state proceeding that is judicial in nature, and we must acknowledge that it implicates all the comity concerns that motivate the Younger doctrine.
 
 
 23
 The third requirement--of an "adequate opportunity" to raise the issue--is also met, even though the state administrative agency may have no power to hear CSXT's constitutional claim, because Michigan law supplies full judicial review of this agency proceeding. The Michigan Administrative Procedures Act, Mich.Comp.Laws Sec. 24.301, provides for review of such proceedings, and the Michigan courts will entertain the federal question on review. See Michigan Gas Storage Co., supra (reviewing preemption issues); Blue Cross and Blue Shield of Michigan v. Baerwaldt, 726 F.2d 296, 300 (6th Cir.1984).
 
 
 24
 Our analysis of this question has been decisively settled by decisions of the Supreme Court and this Court. In Watts v. Burkhart, 854 F.2d 839 (6th Cir.1988), our Court traced the development of the doctrine of abstention as it applies to pending state administrative proceedings. In Watts, a doctor faced a license suspension proceeding before the Tennessee Board of Medical Examiners, a proceeding in which his federal constitutional claims could first be adjudicated only by a state court in review of the decision of the Board. Judge Contie, writing for our Court, concluded that Supreme Court's decision in Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), governs the question:
 
 
 25
 Watts contends that he will not be permitted to assert his constitutional claims in the administrative proceedings before the Board. This contention is supported by the record, which shows that after Watts asserts his constitutional claims as affirmative defenses to the Division's motion to summarily suspend his license, the Division successfully brought a motion to strike those defenses on the ground that they were not within the scope of review of proceedings before the Board of Medical Examiners. This fact alone does not, however, establish that Watts will be deprived of an opportunity to present his constitutional claims. In Dayton Christian Schools, the Supreme Court stated that "it is sufficient ... that constitutional claims may be raised in state court judicial review of the administrative proceeding."
 
 
 26
 Watts, 854 F.2d at 848. The full quotation from the Dayton Christian Schools case is as follows:
 
 
 27
 In any event, it is sufficient ... that constitutional claims may be raised in state-court judicial review of the administrative proceeding. Section 4112.06 of Ohio Rev.Code Ann. (1980) provides that any "respondent claiming to be aggrieved by a final order of the commission ... may obtain judicial review thereof." Dayton cites us to no Ohio authority indicating that this provision does not authorize judicial review of claims that agency action violates the United States Constitution.
 
 
 28
 477 U.S. at 619, 106 S.Ct. at 2718-2719.
 
 
 29
 Finally, we do not agree that the state proceedings which CSXT seeks to have enjoined do not implicate vital state interests. The unsanitary disposal of human waste creates a risk of pollution and disease: preventing such risks is one of the preeminent functions of the state's police power to protect the health and safety of its residents. A finding of preemption will bar the enforcement of a state law, but it is not a finding that the state has no important interest. Rather it is finding that the federal interest is more important or more vital than the state interest, so that the supremacy clause requires that the federal interest prevail.
 
 
 30
 The case before us thus involves an ongoing state administrative proceeding that is judicial in nature; it involves a state administrative proceeding from which CSXT may appeal to Michigan state courts to obtain a ruling on its constitutional claim, and it arises in an area in which Michigan has a vital state interest. Every element of abstention is present.
 
 IV.
 
 31
 For all the foregoing reasons, we conclude that the District Court should have abstained. Our holding should not be read as applying a hard and fast rule of abstention in all state administrative matters involving preemption, for as Professor Shapiro has aptly warned:
 
 
 32
 The complexity of our federal system--the tension between notions of separateness and interdependence, between the existence and the limits of federal supremacy--makes it impossible to frame a simple rule that will resolve every case. Sometimes these tensions cut in favor of federal action. At other times, they counsel reluctance to pull apart federal and state issues that are not easily separated; to disrupt ongoing state proceedings unless the very prosecution of those proceedings, regardless of their outcome, threatens impairment of federal rights; to take over the management of state institutions; or to assume the inability of state courts to recognize and enforce federal rights.
 
 
 33
 Shapiro, Jurisdiction and Discretion, 60 N.Y.U.L.Rev. 543, 583 (1985). We find no considerations in this case, however, which would counsel the federal courts to interfere with the ongoing railroad safety proceeding in the Michigan Department of Transportation. Accordingly, the judgment of the District Court is vacated and the case remanded with instructions to dismiss.
 
 
 
 [1]
 The language of the District Court's injunction is as follows:
 In accordance with the accompanying opinion, this Court grants plaintiff's motion for summary judgment, declares that the LBIA and the FRSA each preempts Rule 460.1473(a), insofar as it is construed to require commodes on locomotives operating in Michigan, and enjoins MDOT from so construing and enforcing the rule.
 
 
 [2]
 Rule 460.1473(a) provides in pertinent part:
 Adequate toilet facilities shall be made available for trainmen, enginemen and yardmen, after hearing thereon and order of the commission, which toilet facilities shall be kept in a reasonably clean and sanitary condition.
 
 
 [3]
 The Act states:
 The Congress declares that laws ... relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law ... relating to railroad safety until such time as the Secretary has adopted a rule ... covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law ... relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law ... and when not creating an undue burden on interstate commerce.
 45 U.S.C. Sec. 434 (1976) (emphasis added).
 
 
 [4]
 [O]ne of the issues in the present case is whether the principle of Younger can properly be extended to this type of suit. NOPSI argues that Younger does not require abstention in the face of a substantial claim that the challenged state action is completely pre-empted by federal law.... We disagree
 NOPSI, 109 S.Ct. at 2516.