**FEDERAL EXPRESS CORPORATION**

v.

**TENNESSEE PUBLIC SERVICE COMMISSION, et al.**

**No. 3:87–0633.**

United States District Court, M.D. Tennessee, Nashville Division.

April 23, 1990.

William R. Willis, Jr., Marian F. Harrison, Willis & Knight, and Jeffrey Rappuhn, Nashville, Tenn., for plaintiff.

Deputy Gen. Counsel, Henry Walker, Tennessee Public Service Com'n, Nashville, Tenn., for defendants.

Val Sanford, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., and Peter A. Greene, Thompson, Hine & Flory, Washington, D.C., for purolator.

**1142**

## MEMORANDUM

WISEMAN, Chief Judge,

This matter is before the Court on remand from the Sixth Circuit Court of Appeals. The Sixth Circuit reversed this court's holding that it did not have subject matter jurisdiction to determine the merits of Federal Express' claim. *See Federal Express Corp. v. Tennessee Public Service Comm'n,* 693 F.Supp. 598 (M.D.Tenn.1988), *aff'd* 878 F.2d 381 (6th Cir.1989) (table), *rev'd on petition for rehearing,* No. 88–5974, Slip op. (6th Cir. 10/6/89). In remanding, the Sixth Circuit instructed this court to consider the question of abstention in view of *CSXT, Inc. v. Pitz,* 883 F.2d 468 (6th Cir.1989).

*CSXT* held that traditional abstention analysis applies even where preemption is the primary constitutional question. 883 F.2d at 473. *See also New Orleans Public Service, Inc. v. Council of New Orleans,* — U.S. ——, 109 S.Ct. 2506, 105 L.Ed.2d 298, *reversing* 798 F.2d 858 (5th Cir.1986) (rejecting argument that presence of preemption question bars District Court from abstaining under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). Traditional analysis of whether *Younger* abstention is appropriate follows a three-step framework.

> [Abstention] is appropriate only where a court can answer all three of the following questions in the affirmative:
>
> > [F]irst, do [the relevant state proceedings] ... constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.
>
> *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

*CSXT,* 883 F.2d at 474 (parallel citations omitted; brackets supplied in *CSXT*).

Federal Express' dispute with defendant, Tennessee Public Service Commission (TPSC), has had a lengthy sojourn in the state administrative process, resulting in TPSC issuing a Show Cause Order on June 9, 1987.[1] The Show Cause Order rejected Federal Express' challenges to the applicability and constitutionality of a state requirement that all intrastate motor carriers apply for a certificate of convenience and necessity, and affirmed an ALJ's decision that Federal Express was an intrastate motor carrier under Tennessee law and was required to obtain a certificate. The TPSC gave Federal Express thirty days to comply with its order, but later extended the deadline to August 25, 1987. Federal Express subsequently filed a petition for review and an application for immediate stay with the Tennessee Court of Appeals, seeking to delay its application for a certificate pending state review of the order. The Court of Appeals denied the stay on August 6, 1987.

Federal Express filed its federal complaint on August 7, alleging, as it did in the state administrative proceedings, that the state regulations were expressly preempted by the Airline Deregulation Act of 1978 and impliedly preempted by the Commerce Clause. On August 10, 1987, this court entered a TRO, forestalling application for the certificate. On August 12, Federal Express moved for entry of a preliminary injunction without further hearing or for delineation of the issues to be presented at the hearing. On August 18, defendant moved to consolidate the preliminary injunction hearing with a hearing on the merits. Two days later, this court consolidated the injunction hearing with the hearing on the merits, extended the TRO to September 10, 1987, the date set for the consolidated hearing, and invited the parties to brief the issue of whether abstention was appropriate. On September 9, the day before the consolidated hearing, Federal Express dismissed its state appeal.

After hearing the matter on September 10 and 11, the Court granted the preliminary injunction for an indefinite period, took the decision on the merits under ad-

---

**1.** The facts underlying the dispute are set forth fully in this court's opinion on plaintiff's motion to reconsider dismissal for lack of subject-matter jurisdiction. *See* 693 F.Supp. at 600–03.

visement, and requested additional briefs on the issue of abstention. Although the abstention issued was argued squarely in the hearing and in the pre- and post-trial briefs, the Court did not reach the issue because it found the prerequisite to abstention, subject-matter jurisdiction, lacking. The Sixth Circuit reversed that holding, however, compelling this court now to address the abstention issue.

Applying the traditional, three-step framework with sensitivity to the federalism concerns underlying *Younger* abstention, the Court finds that it must abstain from determining the merits of this dispute. Consequently, the Court dismisses plaintiff's claim and lifts the injunction against TPSC.

## I. THE STATE PROCEEDINGS CONSTITUTE AN "ONGOING JUDICIAL PROCEEDING".

Where the state proceeding "investigates, declares and enforces liabilities as they stand on present and past facts and under laws supposed already to exist," it is judicial. *NOPSI,* —— U.S. at ——, 109 S.Ct. at 2519, 105 L.Ed.2d at 318 (quoting *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)). *Accord CSXT,* 883 F.2d at 474. Both Federal Express and TPSC, agree, as they must, that the proceedings out of which this suit grew are "judicial," as defined in *NOPSI.* The more difficult issue is whether the proceedings are "ongoing" given that plaintiff has dismissed its state appeal.

As a general rule, the proper point of reference for determining whether state proceedings are "ongoing" is the date the federal complaint is filed. In *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Court applied the day-of-filing rule and held that abstention was appropriate, even though the state proceedings had run their course by the time the matter reached the Supreme Court and dismissal would leave Texaco without any state remedy. 481 U.S. at 17–18, 107 S.Ct. at 1529–30. Similarly, in *Zalman v. Armstrong,* 802 F.2d 199 (6th Cir.1986), the court held that "the proper time of reference for determining the applicability of *Younger* abstention is the time the federal complaint is filed." *Id.* at 204. The court vacated the District Court's judgment in favor of the federal plaintiff, even though the state criminal proceedings against him had been dismissed before the appeal was filed. *Id.* at 206–07. *See also Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (rejecting argument that state judicial proceedings had ended by time federal complaint was filed); *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974) (holding that *Younger* principles did not apply where no state criminal proceeding is pending when federal complaint is filed); *Thomas v. Texas State Bd. of Medical Exam.,* 807 F.2d 453 (5th Cir.1987) (abstention not appropriate where plaintiff voluntarily dismisses state claim before filing federal suit).

Federal Express argues that insisting upon the day-of-filing rule in this case is merely a rote argument because the federalism concerns underlying *Younger* no longer applied after the state appeal was dismissed. Federal Express is correct in arguing that courts must apply the three-step framework with sensitivity to the concerns that animate the *Younger* rule. *See Zalman,* 802 F.2d at 202. But contrary to Federal Express' argument, applying the day-of-filing rule to this case properly balances those concerns.

The *Younger* line of authority is concerned primarily with respecting the sovereignty, integrity, and competence of state systems, and with allowing the state systems to operate without undue interference from the federal government. *See, e.g., Younger,* 401 U.S. at 44, 91 S.Ct. at 750; *Huffman,* 420 U.S. at 601–04, 95 S.Ct. at 1206–08. This line of authority admonishes federal courts to refrain from intruding into the state process in a manner that "reflect[s] negatively upon the state court's ability to enforce constitutional principles." *Cf. Huffman,* 420 U.S. at 604, 95 S.Ct. at 1208; *Steffel,* 415 U.S. at 462, 94 S.Ct. at 1217. In determining whether particular

actions improperly interfere with the state process, the Supreme Court has not distinguished between courts' decisions to issue injunctions against the state and litigants' decisions to forego available state remedies. For example, in *Huffman,* the Court held that proceedings are "ongoing" and, absent exceptional circumstances, courts must abstain where a losing state litigant has failed to exhaust his state appellate remedies. 420 U.S. at 608–10, 95 S.Ct. at 1210–11. As explained in *NOPSI,*

> For Younger purposes, the state's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign. **For the same reason, a party may not procure federal intervention by terminating the state judicial process prematurely—foregoing the state appeal to attack the trial court's judgment in federal court.** '[A] necessary concomitant of Younger is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court.' *Huffman,* 420 U.S. at 608 [95 S.Ct. at 1210].

—— U.S. at ——, 109 S.Ct. at 2518, 105 L.Ed.2d at 317 (emphasis supplied).

Given the system of judicial review of administrative proceedings established in Tennessee's Uniform Administrative Procedures Act, Tenn.Code Ann. §§ 4–5–101 through –324, this court finds no principled basis, for *Younger* purposes, to distinguish Tennessee's administrative proceeding-and-judicial review process from the state judicial systems contemplated in *Huffman* and *NOPSI. Cf.* —— U.S. ——, 109 S.Ct. at 2518–19 n. 5, 105 L.Ed.2d at 318 n. 4 (suggesting but not deciding that litigants who fail to exhaust their state judicial remedies

may not challenge a state administrative finding in federal court). Both are entitled to the same respect from federal courts. Further, as the Supreme Court has intimated, whether federal litigation results in an injunction, or prompts litigants to short circuit the state process to move to a federal forum even though the litigants and the state have devoted resources to processing or adjudicating the claims, the integrity of the state system is disrupted. Thus, rather than mitigating the federalism concerns underlying *Younger,* plaintiff's voluntary dismissal of its state appeal on the eve of the hearing on the merits disrupts the state process and manifests disrespect for state system's competence in precisely the manner that *Younger* and its progeny prohibit.

■ Another purpose of deferring to the state process is to provide the opportunity for narrowing constructions that might obviate constitutional problems and to avoid issuing advisory decisions based upon interpretations of state law that turn out not to be binding on the state courts. *See Pennzoil,* 481 U.S. at 11–12, 107 S.Ct. at 1526–27.[2] Permitting a plaintiff to cut off his state appeal in order to have a federal court hear his claim frustrates this concern.

Thirdly, *Younger* abstention has been crafted to avoid duplicative litigation and waste of judicial resources. *E.g., Younger,* 401 U.S. at 44, 91 S.Ct. at 750; *Steffel,* 415 U.S. at 462, 94 S.Ct. at 1217. Permitting a plaintiff to initiate the federal process while state proceedings are ongoing encourages undue forum shopping based upon last minute assessments of the federal and state proceedings, and frustrates this concern for judicial economy. Furthermore, if the state proceedings turn on questions of federal law, plaintiff may ultimate-

---

**2.** This concern is typically associated with abstention under *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), rather than *Younger.* But, as the Supreme Court has stated, "The various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases. Rather, they reflect a complex of considerations designed to soften the tensions inherent in a sys-

tem that contemplates parallel judicial processes." *Pennzoil,* 481 U.S. at 11 n. 9, 107 S.Ct. at 1526 n. 9. The concern that federal courts not act based upon non-binding interpretations of state law is but one of a complex of considerations that, under these circumstances, is relevant to determining whether abstention under *Younger* is appropriate.

ly appeal to the United States Supreme Court. Thus, requiring a plaintiff under the circumstances presented to remain in state court preserves both judicial resources and plaintiff's right to present federal claims in a federal forum.

Therefore, the Court holds that the day-of-filing rule is both supported in the case law and appropriate in these circumstances. Applying that rule, the Court finds that the underlying state proceedings are "ongoing" for the purposes of *Younger*. Therefore, the first step of the *Younger* analysis is satisfied.

## II. REGULATING THE INTRASTATE TRUCKING INDUSTRY IS AN "IMPORTANT STATE INTEREST."

 The importance of the state interest is not mitigated because of a potential preemption problem. *E.g., CSXT*, 883 F.2d at 475. The importance of the generic proceedings to the state, not the outcome of a particular case, is what matters. *NOPSI*, — U.S. —, 109 S.Ct. at 2516, 105 L.Ed.2d at 315. This circuit has applied *Younger* to such "important state interests" as the regulation of doctors, insurance companies, dentists, electric utilities, and railroads. *See Watts v. Burkhart*, 854 F.2d 839 (6th Cir.1988); *Blue Cross & Blue Shield of Michigan v. Baerwaldt*, 726 F.2d 296 (6th Cir.1984); *Parker v. Commonwealth of Ky. Bd. of Dentistry*, 818 F.2d 504 (6th Cir.1987); *American Electric Power Co. v. Kentucky Public Service Comm'n*, 787 F.2d 588 (6th Cir.1986) (table); *CSXT*, 883 F.2d 468. Tennessee's interest in regulating intrastate trucking is no less important, and satisfies this prong of the *Younger* analysis.

## III. FEDERAL EXPRESS HAD AN ADEQUATE OPPORTUNITY TO RAISE ITS CONSTITUTIONAL CONCERNS IN THE STATE PROCEEDINGS.

Federal Express argues that the Court of Appeals' refusal to grant a stay of the licensing process threatened full judicial consideration of the statutory and constitutional issues. It does not claim that it did not have an opportunity to present its arguments. Rather, Federal Express contends that it could not have had a meaningful hearing before it would have had either to comply or to stop its trucks. This argument misses the point of the "meaningful opportunity" requirement.

In *Pennzoil*, Texaco argued that abstention was inappropriate because no Texas court could have heard Texaco's constitutional arguments within the limited time available to Texaco. The Court rejected the argument, holding that the burden rests upon Texaco "to show that 'state procedural law barred presentation of [its] claims.'" 481 U.S. at 14, 107 S.Ct. at 1528 (quoting *Moore v. Sims*, 442 U.S. 415, 432, 99 S.Ct. 2371, 2381–82, 60 L.Ed.2d 994 (1979)). Thus, the pertinent issue is whether Federal Express' constitutional claims could have been raised in the pending state proceedings, not whether a decision would have been rendered in a timely manner. *See Moore*, 442 U.S. at 425, 99 S.Ct. at 2378 ("The pertinent issue is whether appellees' constitutional claims could have been raised in the state proceedings.") & at 430 n. 12, 99 S.Ct. at 2381 n. 12 ("[A]ppellees had an opportunity to present their federal claims in the state proceedings. No more is required to invoke *Younger* abstention.")

The Sixth Circuit has held that judicial review under Tennessee's Uniform Administrative Procedures Act provides sufficient opportunity to litigate constitutional claims. *Watts v. Burkhart*, 854 F.2d 839, 847 (6th Cir.1988) (statute governing scope of review of expressly contemplates that a petitioner will be afforded the opportunity to raise constitutional issues). *Cf. CSXT*, 883 F.2d at 473 (Merritt, J.) (specifically commending Tennessee Court of Appeals for analysis and decision on a preemption claim).

Thus, under *Pennzoil*, Federal Express's claim that the state court could not have heard the constitutional issue in time misses the mark and begs a demonstration that state procedures denied it the opportunity to litigate the constitutional issue. Under *Watts*, however, Federal Express cannot meet that burden. Therefore, this prong of

the traditional abstention analysis has also been satisfied.

### IV. TPSC HAS NOT WAIVED THE ABSTENTION ARGUMENT.

Although the analysis above supports *Younger* abstention, it would nevertheless be appropriate to decide the merits of plaintiff's claims if TPSC has waived the abstention argument. Abstention can be waived because "if the state voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back to the State's own system." *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 479–80, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977). But mere failure to raise the abstention issue is not sufficient to waive it. *See Sosna v. Iowa*, 419 U.S. 393, 396, 95 S.Ct. 553, 555–56, 42 L.Ed.2d 532 (1975) (Supreme Court first to raise abstention issue); *CSXT*, 883 F.2d at 471 (abstention first raised by defendant-intervenor); *Louisiana Power & Light v. Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (district court has right to raise abstention issue sua sponte). *But see City of Paducah v. Investment Entertainment, Inc.*, 791 F.2d 463, 471 (6th Cir.1986) (Wellford, J., concurring) (city's failure to actively pursue abstention issue even after raising the issue in its answer amounts to waiver). To waive abstention, the State must voluntarily submit to federal jurisdiction and expressly urge the court to proceed to an adjudication of the merits. *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 626, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986). *Cf. Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500 n. 9, 104 S.Ct. 3179, 3184 n. 9, 82 L.Ed.2d 373 (1984).

In this case, the state did not voluntarily submit to federal jurisdiction and urge this court to proceed to an adjudication of the merits. The state did move to consolidate the motion for a preliminary injunction with a hearing on the merits, but in its papers and through the hearing, the state continued to raise the abstention question and vehemently argued that this court did not have subject-matter jurisdiction over the dispute. TPSC's counsel did state in closing arguments that "abstention was no longer an issue" because Federal Express had dismissed its state appeal. But counsel expressly retracted the statement in the post-hearing brief and has continued to assert the abstention issue throughout this litigation. In short, TPSC has not waived the abstention argument.

### CONCLUSION

For the reasons stated above, the Court finds that abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is appropriate. Plaintiff's claim is dismissed and the injunction against defendant, TPSC, is lifted.