**SUN REFINING & MARKETING COMPANY, Plaintiff–Appellee, Cross–Appellant,**

v.

**Joseph E. BRENNAN, Defendant–Appellant, Cross–Appellee.**

**Nos. 88–3858, 88–3927.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 10, 1990.

Decided Dec. 13, 1990.

Rehearing and Rehearing En Banc Denied Feb. 11, 1991.

**636**

Susan B. Nelson, James R. Jeffery, Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, Stanley L. Arabis (argued), Laura Grossi–Tyson, Sun Refining & Marketing Co., Radnor, Pa., for plaintiff-appellee, cross-appellant.

Cordelia A. Glenn, Asst. Atty. Gen., Raul Rosado, Jr. (argued), Office of the Atty. Gen. of Ohio, Columbus, Ohio, for defendant-appellant, cross-appellee.

Before JONES and NORRIS, Circuit Judges, and JARVIS, District Judge.*

JARVIS, District Judge.

In this declaratory judgment action brought pursuant to 28 U.S.C. § 2201, plaintiff, Sun Refining & Marketing Company ("Sun"), asked the district court to declare that its unfired pressure vessels are subject to the exclusive jurisdiction of the Occupational Safety and Health Administration ("OSHA"), and that the State of Ohio, represented by defendant Brennan, does not have jurisdiction over those vessels. Based upon stipulated facts, the district court ruled that Ohio law and standards governing the design, construction, operation, repair, and alteration of plaintiff's vessels are preempted by federal law and permanently enjoined defendant from enforcing the state standards.

The parties have now filed cross-appeals. Sun contends that the district court erred in dismissing two state law counts in its complaint based upon the Eleventh Amendment. Brennan contends that the district

* The Honorable James H. Jarvis, Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

court erred in not abstaining in this case and in finding that federal law pre-empted the state from regulating in the area of unfired pressure vessels. Since we find that the district court was required to abstain in this case under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), we need not and do not reach the Eleventh Amendment and federal pre-emption issues.

## I.

The relevant facts are not in dispute. Sun is engaged in the refining and marketing of petroleum products and has a refinery in Toledo, Ohio utilizing unfired pressure vessels known as reactors to produce a high octane gasoline additive. The reactor consists of an inner shell, a refactory liner, and an outer shell. The outer shell is painted with a heat-sensitive paint which discolors when the temperature of the outer shell exceeds a certain level.

On May 21, 1984, a striking Sun employee lodged a complaint that a "hot spot" existed on the shell of one of plaintiff's unfired pressure vessels. OSHA, as a result of the complaint, began an investigation, and on May 23, 1984, an OSHA Compliance Safety and Health Officer conducted an on-site investigation. The officer inspected the vessel and its external cooling system and, after conferring with industry experts, concluded that the vessel was safe and that there were no OSHA violations. On August 16, 1984, upon review of the case by the OSHA Area Director, the investigation was closed.

The vessel, nonetheless, was inspected on two additional occasions by OSHA. On the third inspection, OSHA contacted the Ohio Division of Boiler Inspection. As requested, the OSHA officer was accompanied by Ohio boiler inspectors who acted as consultants during the third inspection.

On October 9, 1984, representatives of the Ohio Division of Boiler Inspection met to discuss the boiler inspectors' observations of the reactor's "hot spot". Thereafter, on two additional occasions, the Ohio Division of Boiler Inspection independently inspected the vessel. After the first independent inspection, the Division of Boiler Inspection prepared a report of Ohio Code violations for the subject vessel. On October 12, 1984, after completing the second inspection and concluding that the vessel was unsafe, it was "red-tagged" and ordered shut-down. Sun complied with the shut-down order.

## II.

After the red-tagging, Sun immediately filed an expedited administrative appeal of Brennan's order with the Board of Building Appeals ("Board"). A hearing was held on October 18, 1984, and the following day the Board issued its ruling on the shut-down order. Specifically, the Board found:

> Given the evidence, the unit was operated with a hot spot exceeding the certified 350 degree outside skin temperature, we find that according to Article III of NBIC there was an automatic "re-rating" also defined as an alteration.... This automatically requires inspections and recertification by Ohio in order to become a legal pressure vessel. Therefore, the pressure vessel was being illegally operated.

Complaint, Exhibit D.

On November 9, 1984, Sun, as permitted by *Ohio Rev.Code* Ann. § 119.12 (Page's 1987)[1], filed a notice of appeal of the Board's decision in the Court of Common Pleas of Lucas County, a state trial court. In the proceeding before the state trial court, Sun contended that it was exempted from inspection under state law, or in the alternative, that the state was precluded from inspection because of pre-emption by the OSH Act. Sun also raised an argument that the administrative agency failed to send by certified mail a certified copy of its

---

1. *Ohio Rev.Code* § 119.12 provides: "Any party desiring to appeal shall file a notice of appeal with the agency setting forth the order appealed from and the grounds of his appeal. A copy of such notice of appeal shall also be filed by appellant with the court. Unless otherwise provided by law relating to a particular agency, such notices of appeal shall be filed within fifteen days after the mailing of the notice of the agency's order as provided in this section."

decision to Sun as required by *Ohio Rev. Code* § 119.09 (Page's 1987)[2]. Brennan argued that Sun had failed to serve a copy of the notice of appeal on the Board within the fifteen-day period provided for in *Ohio Rev. Code* § 119.12.

The trial court decided that neither party was prejudiced by any procedural irregularities and decided the case on the merits. The trial court, in a written opinion, discussed and rejected Sun's pre-emption claim and upheld the administrative decision.

Sun appealed the trial court decision to the Court of Appeals of Ohio. The state appellate court raised the jurisdictional issues *sua sponte*, and found that procedural irregularities deprived the trial court of jurisdiction. Accordingly, the decision of the common pleas court was reversed.

Sun then filed a notice of appeal to the Supreme Court of Ohio. Shortly thereafter, on October 8, 1986, Sun filed the instant action for declaratory and injunctive relief in the United States District Court for the Northern District of Ohio.

On July 29, 1987, the Ohio Supreme Court reversed the decision of the state appellate court. In a reported opinion the Ohio Supreme Court found that the fifteen-day appeal period contained in *Ohio Rev. Code* § 119.12 does not begin to run until the agency whose order is being appealed fully complies with the procedural requirements of *Ohio Rev. Code* § 119.09. *Sun Refining & Marketing Company v. Brennan*, 31 Ohio St.3d 306, 511 N.E.2d 112 (1987). The Court also noted: "When the Board complies with R.C. 119.09 and sends Sun a certified copy of its decision by certified mail, return receipt requested, Sun may file a new notice of appeal within fifteen days *after the date of mailing of the* Board's decision pursuant to R.C. 119.12." *Id.* 511 N.E.2d at 115, n. 2.

Following the Supreme Court's order, the Board served its decision upon Sun on September 2, 1987. By letter dated September 24, 1987, Sun informed the State that it would not appeal the Board's decision, but would seek relief in federal court.

## III.

■ Initially, we address a preliminary issue raised by Sun in its response to Brennan's abstention argument. Sun contends that both when the initial order of the Board was issued and later when it was reissued, those orders were addressed to "James M. Sciarini, Attorney for Sun Oil Company, Woodville Road, Oregon, Ohio address." Sun also notes that the formal citation utilized by Brennan to start the administrative process was issued to "Sun Oil of Toledo." Sun's proper name is the "Sun Refining & Marketing Company." Based on these misnomers, Sun contends that there is no state proceeding properly against it upon which the district court could have abstained. Sun apparently filed no objection to the misnomer at any time in the state court proceedings. Nor is the issue mentioned by the district court in this case. Although Sun mentions in its memorandum in opposition to the motion for judgment on the pleadings that this second service was defective, it did not indicate how and apparently did not make to the district court the argument that it makes now to us. Since the question was not raised in the district court, it cannot be raised here. *Bannert v. American Can Company*, 525 F.2d 104, 111 (6th Cir.1975), *cert. denied*, 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976). Nor does Sun claim any prejudice that it has suffered as a result. We believe that Sun has long ago waived any objection it had to being misnamed by the defendant.

## IV.

The United States Supreme Court has emphasized on numerous occasions that abstention from jurisdiction is the exception,

---

**2.** In pertinent part *Ohio Rev. Code* § 119.09 states: "After such order is entered on its journal, the agency shall serve by certified mail, return receipt requested, upon the part affected thereby, a certified copy of the order and a statement of the time and method by which an appeal may be perfected. A copy of such order shall be mailed to the attorneys or other representatives of record representing the party."

not the rule, and that federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Nevertheless, there are a few, often indistinct, classes of cases in which a federal court should decline to exercise that jurisdiction. Among the classes of cases in which abstention is required is that represented by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. The *Younger* doctrine, in its original form, maintained that federal court abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. *Id.*

At the heart of the *Younger* doctrine are notions of comity and deference to state courts necessitated by our federal system. The Court explained:

> This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity", that is a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fair best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism". . . .

*Id.* at 44, 91 S.Ct. at 750.

■■■ The Court has also made clear that the policies underlying the *Younger* doctrine are fully applicable to state non-criminal judicial proceedings where important state interests are involved. *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Three requirements have evolved for proper invocation of the *Younger* doctrine: (1) there must be on-going state judicial proceed-

ings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges. *Id.* 457 U.S. at 432, 102 S.Ct. at 2521. The Court has further recently pointed out that *Younger* abstention cases involving pre-emption claims should be analyzed in the same manner as other abstention cases. *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 2516, 105 L.Ed.2d 298 (1989) (*NOPSI*). Finally, unlike other forms of abstention, when a case is properly within the *Younger* category of cases, there is no discretion on the part of the federal court to grant injunctive relief. *Colorado River*, 424 U.S. at 816 n. 22, 96 S.Ct. at 1246 n. 22.

## V.

### On–Going State Judicial Proceedings

■■■ Sun contends that there were no on-going state judicial proceedings which would require abstention. Sun denies that any proceedings were "on-going" and asserts that, even if they were, those proceedings were not "judicial" in character.

With respect to whether any proceedings were on-going, it should be observed that this court has previously held that the proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed. *Carras v. Williams*, 807 F.2d 1286, 1290 n. 7 (6th Cir.1986). The short answer to this question is that at the time the federal complaint was filed in this case, the state court action was on-going because it was then pending before the Ohio Supreme Court.

However, even more importantly, we believe that the decision in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), requires that the proceedings in this case be treated as on-going. *Huffman* involved a proceeding in state court instituted to close a theatre showing pornographic movies. The state trial court ordered the theatre closed and the owner, rather than appealing within the state court system, immediately filed suit

in federal district court under 42 U.S.C. § 1983, alleging that the state nuisance statute in question violated his constitutional rights. After holding that, under the circumstances, *Younger* principals were applicable even though the state proceeding was civil in nature, the court went on to hold that *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies. *Id.* 420 U.S. at 609, 95 S.Ct. at 1210. The Court observed that regardless of when the state trial court's judgment became final as "a necessary concomitant of *Younger*, a party to a state court proceeding must exhaust state appellate remedies before seeking relief in district court, unless he can bring himself within one of the exceptions specified in *Younger.*" *Id.* 420 U.S. at 608, 95 S.Ct. at 1210. *See also, World Famous Drinking Emporium,* 820 F.2d 1079 (9th Cir.1987) (*Younger* abstention appropriate where plaintiff in a § 1983 action in district court had failed to pursue appeal in state court of a city's denial of an entertainment permit).

As permitted by the Ohio Supreme Court, Sun had an opportunity in this case to appeal the decision of the Board of Building Appeals through the state judicial system. It clearly had unexhausted state appellate remedies. We find that there was therefore an on-going state proceeding in this case.

While *Younger* has been expanded beyond criminal proceedings and even beyond proceedings in court, it has never been extended to proceedings not "judicial in nature." *NOPSI,* 109 S.Ct. at 2519. In *NOPSI,* the court explained that an administrative agency's proceeding will be characterized as judicial or legislative depending on the "nature of the final act" which it is designed to produce. *NOPSI,* 109 S.Ct. at 2519 (*quoting Prentis v. Atlantic Coastline Company,* 211 U.S. 210, 226–27, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908) (Holmes, J.). A proceeding is judicial where it "investigates, declares and enforces liabilities as they stand on present and past facts and under laws supposed already to exist." *Id.* 109 S.Ct. at 2520 (*quoting Prentis,* 211

U.S. at 226, 29 S.Ct. at 69). In this case, there was an administrative proceeding before the Board of Building Appeals in which the Board reviewed the decision of the Ohio Division of Boiler Inspection and determined that Sun had violated applicable portions of the *Ohio Rev.Code* and *Ohio Adm.Code.* The Board investigated present and past facts and applied its findings to laws already existing. Accordingly, we conclude that there is an on-going state proceeding that is judicial in nature.

## VI.

### *The Importance of the State's Interest*

■ Under the second prong of the *Younger* test, to extend *Younger* to noncriminal judicial proceedings, important state interests must be present. *Middlesex,* 457 U.S. at 434–35, 102 S.Ct. at 2522–23. There can be no doubt that Ohio has an important interest in preserving the health and safety of its workers. Similarly, the federal government has an equally important interest in regulating through OSHA the health and safety of those same workers.

The district court in this case pointed out the equally important federal interests in regulating the workplace and observed that the importance of such federal interests had led several courts to conclude that legitimate state interests contemplated by *Younger* and *Middlesex* do not exist where state action has been pre-empted by the Constitution. *See, e.g., Middle South Energy, Inc. v. Arkansas Public Service Commission,* 772 F.2d 404, 417 (8th Cir. 1985), *cert. denied,* 474 U.S. 1102, 106 S.Ct. 884, 88 L.Ed.2d 919 (1986) (no legitimate state interest when state action pre-empted). In other words, in pre-emption cases the federal interest was greater and abstention less appropriate than in cases involving other constitutional questions. At the time the district court decided this case, based on prior precedents, such an analysis was reasonable and logical. However, the Supreme Court has subsequently made it clear that "[t]here is no greater federal interest in enforcing the supremacy of fed-

eral statutes than in enforcing the supremacy of explicit constitutional guaranties, and constitutional challenges to state action, no less than preemption-based challenges, call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action." *NOPSI*, 109 S.Ct. at 2516.

*NOPSI* indicates that under the second prong of the *Younger* test, the district court does not weigh the state interest against any countervailing federal interest. The Court observed: "When we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the *outcome* of the particular case—which could arguably be off-set by a substantial federal interest in the opposite outcome." *Id.* Instead, "what we look to is the importance of the generic proceedings to the state." *Id.* *See also CSXT, Inc. v. Pitz*, 883 F.2d 468 (6th Cir.1989). The issue in this case is whether Ohio has a substantial, legitimate interest in regulating the safety of the workplace in Ohio. We think that it does. Ohio's statutes governing boilers and unfired pressure vessels were enacted pursuant to the state's general police power to provide for the general safety, health and welfare of its citizens. Accordingly, the second prong of the *Younger* test has been satisfied.

## VII.

### Adequate Opportunity to Raise Constitutional Questions

With regard to the third prong of the *Younger* test, the Supreme Court has noted that where important state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims. *Middlesex*, 457 U.S. at 431–32, 102 S.Ct. at 2521. The pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims. *Id.* This court has previously observed that even where state administrative proceedings would not afford the opportunity to raise constitutional claims, it is sufficient to satisfy this third prong that constitutional claims may be raised in state court judicial review of the administrative proceeding. *Watts v. Burkhart*, 854 F.2d 839 (6th Cir. 1988); *Pitz.*

In this case it is undisputed that concurrent jurisdiction exists in the Ohio state courts to decide the federal pre-emption issue. In fact, plaintiff previously presented its federal pre-emption argument to the state trial court in Ohio. Sun could have argued that issue on appeal from the second decision of the Board and argued the issue throughout the Ohio state court system.

As another panel of this court noted in *Pitz*, state judges are not inferior to federal judges and have the ability to interpret federal statutes, however complex. *Pitz*, at 472. There is no reason to believe that state judges are any less able to decide pre-emption cases than they are to decide other constitutional questions. *Id.* We conclude that the plaintiff has had an adequate opportunity to raise its federal pre-emption claim.

Accordingly, each element required for *Younger* abstention is present in this case. It involves an on-going state administrative proceeding that is judicial in nature, it arises in an area in which Ohio has a vital state interest, and it involves a state administrative proceeding from which Sun may appeal to the Ohio state courts to obtain a ruling on its constitutional claim.

## VIII.

### Irreparable Injury

There is an exception to *Younger* which provides that abstention may be improper even where the *Younger* criteria are met but where plaintiff might suffer "irreparable injury" absent equitable relief. Under *Younger*, irreparable injury may be established by showing that the challenged state statute is "flagrantly and patently violative of express constitutional prohibitions ..." *Younger*, 401 U.S. at 43–44, 91 S.Ct. at 750. Sun contends that this exception is applicable to the case before us.

We find no proof that the Ohio statutes at issue are flagrantly and patently violative of any express constitutional provi-

sions. Under state law, the Board is charged with authority to promulgate rules governing the construction, installation, inspection, repair, and operation of boilers and unfired pressure vessels. *Ohio Rev. Code Ann.* § 4104.02 (Page's 1987)[3]. However, this authority is limited by the following section:

> Inspection exemptions; safety devices.
>
> (a) Sections 4104.01 to 4104.20, and Section 4104.99 of the Revised Code do not apply to the following boilers and unfired pressure vessels:
>
> (1) Boilers and unfired pressure vessels under federal control or subject to inspection under federal laws.

*Ohio Rev. Code* § 4104.04 (Page's 1987). Thus, Ohio law conforms itself to the parameters of federal law and is not applicable where federal control applies. We cannot say that this state law is flagrantly and patently in violation of any federal constitutional provisions. If anything, Ohio law is consistent with federal pre-emption and expressly accommodates it. None of the exceptions to the *Younger* doctrine are applicable here.

### IX.

Finally, we note that plaintiff has already had the benefit of one ruling at the state trial court level on the question of federal pre-emption and then sought to change forums, apparently to avoid an adverse decision in state court. We believe that notions of comity and federalism render abstention particularly appropriate under such circumstances. Accordingly, the judgment of the district court is VACATED and the case REMANDED with instructions to dismiss.

---

**3.** Section 4104.02 provides in relevant part as follows: "The board of building standards shall: (A) [f]ormulate rules for the construction, installation, inspection, repair, conservation of energy, and operation of boilers and the construction, inspection, and repair of unfired pressure vessels ..."