62 F.3d 1417
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gary BEEMAN, Petitioner-Appellant,
v.
Bruce STAFFORD, Warden, Respondent-Appellee.
 No. 94-3634.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1995.
 
 Before: BOGGS, SILER, and GIBSON,* Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner-appellant Gary Beeman appeals the district court's denial of his petition for writ of habeas corpus. For the reasons set out below, we affirm.
 
 
 2
 * Underlying this appeal are two Ohio actions involving the petitioner-appellant, Gary Beeman. The first is a Cuyahoga County criminal action in which Beeman is the defendant. The second is a Lake County Juvenile Court matter involving Beeman's daughter.
 
 
 3
 On August 5, 1992, a Grand Jury in Cuyahoga County, Ohio indicted Beeman for various sex offenses. The alleged victim of Beeman's offenses was his five-year-old daughter, Christian G. Beeman.
 
 
 4
 Following his indictment in Cuyahoga County, Beeman moved his family from Cuyahoga County to Lake County, Ohio. There, the Lake County Ohio Department of Human Services filed a complaint against Beeman in the Lake County Common Pleas Court, Juvenile Division. The complaint alleged that Christian Beeman was an abused child, and that her father had sexually abused her.
 
 
 5
 The Juvenile Court held a hearing on the Lake County complaint on May 20, 1993. At the conclusion of the hearing, the Judge stated that "this Court cannot conclude that the State has proven by clear and convincing evidence that Gary Beeman sexually abused his daughter." However, the judge did find that there was evidence of sexual misconduct:
 
 
 6
 [O]n at least three occasions, [Beeman's] infant daughter was permitted to observe her father in situations which are absolutely improper for a young child to observe. The Court can accept no excuse for his allowing his child to see him masturbating, urinating, or making love. Yet she did observe each of those things at least one time. In addition, there is a serious question remaining of whether or not he allowed her to touch his exposed penis. This Court cannot accept his casual statement that he does not know whether she did or not. Any man would know if such an incident occurred. His lack of vehement denial must be accorded some weight in considering this case. In addition, there is evidence that he was under the influence of alcohol and/or cocaine in her presence on more than one occasion.
 
 
 7
 Ultimately, the judge ruled that Christian Beeman, while not sexually abused, was an abused child under Ohio law, and that she was "endangered" by Gary Beeman.
 
 
 8
 While the Lake County action was pending, Beeman received continuances for his Cuyahoga County criminal trial. After the May 20, 1993 Lake County hearing, Beeman began a series of appeals from his Cuyahoga County indictment.
 
 
 9
 On September 21, 1993, Beeman petitioned for a Writ of Habeas Corpus in the United States District Court for the Northern District of Ohio. He claimed that the Lake County Juvenile Court judge's findings barred his pending criminal prosecution in Cuyahoga County because of collateral estoppel and the Constitutional prohibition against double jeopardy. Apparently Beeman sought an injunction to prevent his trial, a conclusion buttressed by his habeas fact sheet, which states that he sought the writ to "prevent a state trial."
 
 
 10
 On October 27, 1993, the district court referred Beeman's petition to a Magistrate Judge who recommended that the court dismiss Beeman's petition, as Beeman was not "in jeopardy" in the Lake County Juvenile proceeding. On May 10, 1994, after reviewing Beeman's timely objections to the Magistrate Judge's recommendation, the district court adopted the recommendation and denied Beeman's petition.
 
 II
 
 11
 We affirm the district court's denial of the petition, but on different grounds. The district court should not have addressed the merits, but should have abstained under the authority of Younger v. Harris, 401 U.S. 37 (1971).
 
 
 12
 The application of collateral estoppel can be part of the constitutional guarantee against double jeopardy. Ashe v. Swenson, 397 U.S. 436 (1970); United States v. Payne, 2 F.3d 706, 710-11 (6th Cir.1993); United States v. Uselton, 927 F.2d 905, 907-08 (6th Cir.1991). When a valid and final judgment contains a determination of an issue of ultimate fact, that issue cannot be litigated again by the same parties in any subsequent action. Collateral estoppel can result either in prohibiting the introduction of particular evidence in a subsequent trial, or in precluding a subsequent trial entirely. Ashe, 397 U.S. at 455. The burden is on the defendant to prove by convincing and competent evidence that a court or jury necessarily determined the fact sought to be foreclosed against the government in a prior trial. Uselton, 927 F.2d at 907. If the defendant can carry his burden, "the doctrine of collateral estoppel is not made inapplicable by the fact that the second proceeding is a criminal case and the prior proceeding was civil in nature." Payne, 2 F.3d at 708. Reality tempers this possibility; in the federal context for example, no " 'federal court presiding over a criminal trial [has] granted preclusive effect to a prior administrative ruling contrary to the Government's position in the criminal case.' " Payne, 2 F.3d at 708 (quoting United States v. Alexander, 743 F.2d 472, 476 (7th Cir.1984)). See also United States v. Lasky, 600 F.2d 765, 768 (9th Cir.), cert. denied, 444 U.S. 979 (1979).
 
 
 13
 Nonetheless, Beeman may have a theoretical collateral estoppel and double jeopardy claim. However, the district court was wrong to address the merits of the petition, since federal courts generally do not interfere with ongoing state criminal proceedings, preferring to abstain in all but a few narrow circumstances.
 
 
 14
 Admittedly, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). "Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.' " Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992) (quoting Colorado River, 424 U.S. at 817). Nonetheless exceptional circumstances supporting abstention may exist in certain cases. The doctrinal foundation for abstention is found in a series of Supreme Court cases: Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941), Burford v. Sun Oil Co., 319 U.S. 315 (1943), Younger, and Colorado River. See Colorado River, 424 U.S. at 813-19 (reviewing three abstention doctrines and enunciating judicial economy doctrine). See also Ada-Cascade Watch Co. v. Cascade Resource Recovery, 720 F.2d 897, 901-03 (6th Cir.1983).
 
 
 15
 Of the various forms of abstention, Younger abstention is the broadest. Under the Younger doctrine of abstention, absent extraordinary circumstances, a federal court must decline to interfere with pending state civil or criminal judicial proceedings involving important state interests. Younger, 401 U.S. at 44. See New Orleans Public Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 367-68 (1989); Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Berger v. Cuyahoga County Bar Ass'n, 983 F.2d 718, 722-24 (6th Cir.), cert. denied, 113 S.Ct. 2416 (1993); Sun Refining & Mktg. Co. v. Brennan, 921 F.2d 635, 638-42 (6th Cir.1990).
 
 
 16
 Three requirements must be met for Younger abstention to be appropriate: (1) there must be an on-going state judicial proceeding; (2) the proceeding must implicate important state interests; and (3) there must be an adequate opportunity in the state proceeding to raise constitutional challenges. Middlesex County Ethics Comm., 457 U.S. at 432; Sun Refining, 921 F.2d at 639. The proper time for determining the applicability of Younger abstention is when the party files its petition or complaint in the district court. Sun Refining, 921 F.2d at 639.
 
 
 17
 Clearly this case meets these three requirements. First, Beeman is currently under indictment for the various crimes mentioned previously, and there is no evidence that Ohio has closed the matter. Second, it cannot be seriously argued that state enforcement of child sex abuse laws is not an "important state interest." Third, Beeman clearly has avenues through the criminal justice system in Ohio to raise this constitutional issue.
 
 
 18
 Having met the broad and straightforward standards of Younger abstention, it is only under extraordinary circumstances that a federal court may interfere with state proceedings. Those circumstances are: (1) where irreparable injury is both "great and immediate," Younger, 401 U.S. at 46; (2) where the state law is "flagrantly and patently violative of express constitutional prohibitions," Id., at 53; (3) or where there is a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief," Id., at 54. None of these circumstances apply here.
 
 
 19
 While there is a threat of injury, we are not prepared to say it is irreparable. Beeman will have ample opportunity to present these claims in the state courts. Nor is it clear that any potential injury is immediate. Beeman may very well have the charges dismissed before or during trial. Failing this, he may be acquitted by a jury. The prospect faced by Beeman is one faced by state defendants every day. Potentially meritorious constitutional claims, be they search and seizure problems, self-incrimination concerns, or double jeopardy issues, must be addressed by a state court in the first instance. To classify Beeman as facing great and immediate irreparable injury would invite similar claims by every state defendant, a Pandora's box that the limited jurisdiction afforded federal courts cannot justify opening.
 
 
 20
 Ohio's position on the law is not "flagrantly or patently violative" of an express provision of the Constitution. To the contrary, Ohio's position (that the juvenile court adjudication did not place Beeman in jeopardy) appears to be in accord with the majority view of those states that have addressed the issue. See, e.g., Joiner v. State 500 So.2d 81 (Ala.Crim.App.1986); Fariss v. State, 798 S.W.2d 103 (Ark.1990); People v. Percifull, 12 Cal.Rptr.2d 331 (Cal.Ct.App.1992); State v. Powell, 819 P.2d 561 (Idaho 1991); Gregory v. Commonwealth, 610 S.W.2d 598 (Ky.1980); People v. Gates, 452 N.W.2d 627 (Mich.1990). But see Bowling v. State, 470 A.2d 797 (Md.1984). No federal court has ever ruled that the United States Constitution requires a different result.
 
 
 21
 Finally, there is no evidence of harassment or bad faith by the prosecution. The state is merely proceeding with an indictment filed well before the civil adjudication. Furthermore, as described previously, there is some evidence of sexual misconduct, so it cannot be said that the prosecution's case is so patently meritless as to amount to "harassment" or "bad faith," thereby warranting federal intervention. The fact that it is Beeman who may have a meritless claim makes Younger abstention particularly appropriate in this case. Beeman argues at length about the extensive hearing held in juvenile court, a hearing that ran seven days and involved fifteen witnesses. However, none of that material is part of the record here. Furthermore, the exact charges for which Beeman is currently under indictment are also not clearly presented. Therefore, it is difficult to tell if these are identical parties pursuing identical accusations. The issues raised by Beeman cannot be decided based on the abbreviated record presented here. Therefore, abstaining will not only serve the traditional concerns of federal-state comity, but also will allow the record to be fully developed at trial.
 
 
 22
 Unlike other abstention doctrines, when a case is properly within the Younger doctrine and there are no exceptional circumstances, the district court has no discretion to grant injunctive relief and must decline to interfere with the state tribunal. Colorado River, 424 U.S. at 816 n. 22; Sun Refining, 921 F.2d at 639. Therefore, it was inappropriate for the district court to address the double jeopardy issue on the merits, because, under Younger, it could not have granted any relief. As such, the district court rendered an advisory opinion, a concept our judicial system has rejected as inconsistent with the "case and controversy" requirement of Article III of the United States Constitution. The appropriate action for the district court would have been to abstain from exercising its jurisdiction.[2]
 
 III
 
 23
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [2]
 We recognize that Younger abstention can be waived by a state. Sosna v. Iowa, 419 U.S. 393, 396-97 n. 3 (1975). See also Brown v. Hotel and Restaurant Employees and Bartenders Int'l Union Local 54, 468 U.S. 491, 500 n. 9 (1984); Ohio Bureau of Employment Servs. v. Hodory, 431 U.S. 471, 479-80 (1977). But "in each of these cases the State expressly urged this Court or the District Court to proceed to an adjudication of the constitutional merits." Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 626 (1986). When faced with grounds for Younger abstention, a federal court will only tread were it is unequivocally invited. In this case, Ohio has never explicitly waived Younger or expressly urged an adjudication of the constitutional merits. As such, abstention remains appropriate. See Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure, 2nd Sec. 2.15(f) ("even though a state may have a tenable ... claim, it may voluntarily submit to federal jurisdiction, but its waiver must be explicit and clear. It should expressly urge the federal court to decide the case on the constitutional merits.")