*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0009p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WILLIAM M. O'NEILL,

*Plaintiff-Appellee,*

*v.*

No. 07-3206

JONATHAN E. COUGHLAN,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-01612—Ann Aldrich, District Judge.

Argued: December 4, 2007

Decided and Filed: January 9, 2008

Before: GUY, MOORE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Stephen W. Funk, ROETZEL & ANDRESS, Akron, Ohio, for Appellant. J. Michael Murray, BERKMAN, GORDON, MURRAY & DEVAN, Cleveland, Ohio, for Appellee. **ON BRIEF:** Stephen W. Funk, ROETZEL & ANDRESS, Akron, Ohio, for Appellant. J. Michael Murray, Raymond V. Vasvari, Jr., BERKMAN, GORDON, MURRAY & DEVAN, Cleveland, Ohio, for Appellee.

GUY, J., delivered the opinion of the court, in which GILMAN, J., joined. MOORE, J. (pp. 6-8), delivered a separate dissenting opinion.

---

**OPINION**

---

RALPH B. GUY, JR., Circuit Judge. Defendant Jonathan E. Coughlan, Disciplinary Counsel for the Supreme Court of Ohio, appeals from the district court's grant of summary judgment to plaintiff William O'Neill in this action seeking to enjoin enforcement of three canons of the Ohio Code of Judicial Conduct. O'Neill, a judge of the Ohio Court of Appeals at the time, was accused of violating these canons while campaigning for election to the Ohio Supreme Court in 2004. The district court concluded that enforcement of these canons would impermissibly restrict O'Neill's free speech rights as guaranteed by the First Amendment. We vacate the judgment entered in favor of O'Neill because the district court should have abstained from deciding the merits of the case under the authority of *Younger v. Harris*, 401 U.S. 37 (1971).

1

## I.

William O'Neill was a candidate seeking election to the Ohio Supreme Court in 2004. His campaign theme was "Money and Judges Don't Mix." To that end, he supported judicial campaign finance reform and refused any donation over $10. In addition to the "Money and Judges Don't Mix" slogan, O'Neill's campaign website included the following statement: "The time has come to end the public's suspicion that political contributions influence court decisions. The election of Judge O'Neill is the best step toward sending the message: 'This Court is Not For Sale!'"

In July of 2004, James Trakas, Chairman of the Cuyahoga County Republican Party, filed a grievance with the Office of the Disciplinary Counsel. The grievance alleged that O'Neill's campaign literature (1) failed to disclose the court for which he was a judge, in violation of Ohio Code of Judicial Conduct Canon 7(D)(2) (prohibiting a candidate from "[using] the term 'judge' when a judge is a candidate for another judicial office and does not indicate the court on which the judge currently serves"); (2) wrongfully identified his political party affiliation, in violation of Canon 7(B)(3)(b) ("After the day of the primary election, a judicial candidate shall not identify himself or herself in advertising as a member of or affiliated with a political party"); and (3) wrongfully attacked the credibility of the Ohio judiciary. As to this last allegation, the grievance alleged that O'Neill's campaign statements "viciously malign the fair, unbiased and impartial judiciary" without specifying any canon that O'Neill violated. O'Neill and the district court, however, inferred that O'Neill was accused of violating Canon 7(B)(1), which requires judges and judicial candidates to "maintain the dignity appropriate to judicial office."

Following standard procedure, the Office of the Disciplinary Counsel sent O'Neill a letter advising him of Trakas's grievance. That letter stated, in part:

> Please be advised that the enclosed grievance has been filed against you by James Trakas. Pursuant to Gov. Bar R. V, as referenced in Gov. Jud. R. II, the Disciplinary Counsel is required to investigate any matter filed with him or that comes to his attention. Accordingly, this office must obtain a response to such grievances, regardless of the form or ultimate sufficiency thereof. In accordance with Gov. Bar R. V, this investigation will be confidential.
>
> Please provide your written response on or before August 4, 2004. A copy of your reply will be sent to the grievant unless you request in writing that it not be so furnished . . . .

Without responding to this letter, O'Neill commenced this action in federal court alleging that the canons were unconstitutional under the First and Fourteenth Amendments.

O'Neill filed motions seeking a temporary restraining order and preliminary injunction to prevent Coughlan from enforcing the canons against him. Coughlan argued in response that the case was not ripe for review and that Coughlan was not the proper defendant. After a prompt hearing, the district court rejected the "ripeness" argument, issued a temporary restraining order, and requested additional briefing on the question of whether a preliminary injunction should be issued as well. Coughlan's response included both opposition to the preliminary injunction and a motion to dismiss the complaint. In his brief, Coughlan reiterated his arguments that O'Neill's suit was not ripe because there had been no disciplinary action, and that he was the wrong defendant. He also argued that the injunction should not issue because O'Neill's claims were not likely to succeed on the merits.

On September 14, 2004, the district court granted plaintiff's motion for a preliminary injunction and deferred ruling on defendant's motion to dismiss. Coughlan did not move for reconsideration or file an appeal; but, ten days later, filed a "motion to clarify" whether the

injunction applied only to O'Neill or to any person in the State of Ohio. In a "supplemental motion to dismiss" filed October 6, 2004, Coughlan argued for the first time that the district court should abstain from exercising its jurisdiction under *Younger*. The district court apparently never ruled on defendant's motion to dismiss.

On March 10, 2006, more than a year later, Coughlan moved to dissolve the preliminary injunction on the grounds of *Younger* abstention. In denying the motion, the district court found that although abstention would apply, Coughlan had waived Ohio's *Younger* abstention argument by choosing to address the merits of O'Neill's constitutional claim without raising the issue of abstention. *O'Neill v. Coughlan*, 436 F. Supp.2d 905, 908 (N.D. Ohio 2006). In deciding the cross-motions for summary judgment that followed, the district court again found defendant had waived the argument for *Younger* abstention, granted O'Neill's motion for summary judgment, converted the preliminary injunction to a permanent injunction, and entered judgment accordingly. *O'Neill v. Coughlan*, No. 04-CV-1612, 2007 WL 218717 (N.D. Ohio Jan. 26, 2007). The judgment declared that Canons 7(B)(3)(b) and 7(D)(2) are facially unconstitutional, and that Canon 7(B)(1) is unconstitutional as applied to O'Neill. This appeal followed.[1]

## II.

Under *Younger* abstention, absent unusual circumstances not asserted here, a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved. *Younger*, 401 U.S. at 41; *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006); *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 638-42 (6th Cir. 1990). *Younger* abstention is not a question of jurisdiction, but is rather based on "strong policies counseling against the exercise of such jurisdiction." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986).

### A.     Waiver

Both parties acknowledge that a state can waive application of *Younger* abstention. *Sosna v. Iowa*, 419 U.S. 393, 396-97 n.3 (1975); *Ohio Bureau of Empl. Servs. v. Hodory*, 431 U.S. 471, 479-80 (1977). The dispute here is whether a state waives the right to assert *Younger* simply by addressing the merits of the case without having raised the issue of *Younger* abstention. While no controlling authority has decided this precise issue, the decisions in *Sosna* and *Hodory* provide guidance concerning the relevant parameters of such a waiver. Specifically, the Court in *Sosna* raised the issue of *Younger* abstention *sua sponte*, but agreed to decide the case after the state urged the Court to reach the merits of the plaintiff's constitutional claim. 419 U.S. at 396-97 n.3.

Similarly, *Younger* abstention was raised *sua sponte* in *Hodory*, but the state asked that the Court disregard *Younger* and decide the constitutional issue on the merits. The Supreme Court agreed to disregard *Younger* abstention because the state wanted a decision on the merits, explaining that:

---

[1]The dissent contends that O'Neill was placed in a catch-22. If he sought vindication in federal court too early, his case would be dismissed for lack of ripeness, and if he brought suit when his claim was ripe, it would be dismissed under the *Younger* abstention doctrine. I see no difference between O'Neill and any other litigant. All litigants who bring suit before their claims are ripe face dismissal. Similarly, if the *Younger* doctrine is applicable to a case that is ripe, it too will be dismissed. It can be assumed that in most cases where the *Younger* doctrine is applied, it is not to the liking of the plaintiff. The doctrine, founded on principles of comity, is based upon concerns that rise above the wishes of individual litigants.

> *Younger* and these cited cases express equitable principles of comity and federalism. They are designed to allow the State an opportunity to "set its own house in order" when the federal issue is already before a state tribunal.
>
> It may not be argued, however, that a federal court is compelled to abstain in every such situation. If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system. In the present case, Ohio either believes that the District Court was correct in its analysis of abstention or, faced with the prospect of lengthy administrative appeals followed by equally protracted state judicial proceedings, now has concluded to submit the constitutional issue to this Court for immediate resolution. In either event, under these circumstances *Younger* principles of equity and comity do not require this Court to refuse Ohio the immediate adjudication it seeks.

*Hodory*, 431 U.S. at 479-80. It is instructive that in both *Sosna* and *Hodory*, the Supreme Court raised *Younger* abstention *sua sponte* well after the merits of the dispute had been argued and decided, and no suggestion was made that *Younger* had been waived because it was not raised earlier in the proceedings. Moreover, in both cases, the Court *permitted* the state to waive *Younger* abstention upon the state's clear and explicit statement that it did not want the Court to apply *Younger*. This indicates that it is not necessary for the issue to have been raised either in the state's first responsive pleading or before the state addresses the merits.

This court discussed a waiver of *Younger* abstention in *Federal Express Corp. v. Tennessee Public Service Commission*, 925 F.2d 962, 965 (6th Cir. 1991), but did not decide the precise question at issue in this case. This court held that the state defendant had not waived the argument for *Younger* abstention. *Id*. at 967. In doing so, we concluded that the state was not required to raise abstention in its pleadings, particularly since abstention may be raised by the court *sua sponte*. *Id*. at 966-67. The defendant had argued for abstention, but also moved for consolidation of the hearing on the motion for preliminary injunction with the trial on the merits. The defendant conceded that abstention did not apply at the hearing, but later retracted that concession in a supplemental filing. The court explained that the defendant had "persistently argued for abstention," and that the motion to consolidate hearing was "a means of avoiding duplicative proceedings rather than a request for the court to reach the merits of the constitutional issue." *Id*. at 967.

According to O'Neill, *Federal Express* implies that any request that the federal court reach the merits of the lawsuit constitutes waiver of any argument for *Younger* abstention. Such an interpretation stretches the holding in *Federal Express* too far. This court merely restated the principle explained in *Hodory* and in *Dayton Christian Schools* that a state may waive an argument for *Younger* abstention by affirmatively urging the federal court to proceed to the merits of a constitutional claim despite the possible application of *Younger* abstention. There was no such explicit waiver of abstention in *Federal Express*.

In another case, this court found that an argument for *Younger* abstention had not been waived even though the issue had not been raised by any party in the district court. *Beeman v. Stafford*, No. 94-3634, 1995 WL 456367, at *4 (6th Cir. Aug. 1, 1995) (unpublished). This court affirmed the denial of the habeas petition, but concluded that the district court should have abstained from deciding the merits. The *Younger* issue was raised *sua sponte* on appeal, and we held that the district court had no discretionary authority to grant injunctive relief because *Younger* abstention applied. We also explained that although *Younger* abstention can be waived by a state, in each of the Supreme Court cases the state expressly urged the court to adjudicate the constitutional claim on the merits. *Id*. at *4 n.2 (quoting *Dayton Christian Sch.*, 477 U.S. at 626). Relying on the

Supreme Court's precedent, this court concluded that: "When faced with grounds for *Younger* abstention, a federal court will only tread [wh]ere it is unequivocally invited." *Id*. We agree.

Accordingly, we find that Coughlan's failure to assert *Younger* absention before arguing for dismissal of the claims on the merits did not constitute waiver of the right to seek dismissal of the complaint on the grounds of *Younger* abstention.

## B.        **Merits of *Younger* Abstention**

*Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. *Younger*, 401 U.S. at 40-41. We look to three factors to determine whether a court should abstain from hearing a case under the *Younger* doctrine: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Sun Refining*, 921 F.2d at 639. O'Neill contested only the first factor, arguing that there was no ongoing state judicial proceeding because the filing of the grievance was a predicate to, but did not start, a state judicial proceeding.[2]

We reject O'Neill's argument, as the district court did, because the Ohio Supreme Court has held that the filing of a grievance is the beginning of the judicial process. *Hecht v. Levin*, 613 N.E.2d 585, 588 (Ohio 1993). In *Hecht*, the court was asked to decide whether the filing of a grievance under Gov. Bar R. V[3] is part of a judicial proceeding in the context of a libel and slander lawsuit. If the filing of a grievance is part of a judicial proceeding, then the griever is immune from libel and slander charges. The court concluded that the filing of a grievance is part of a "judicial proceeding" because "such a filing initiates the purely judicial disciplinary procedure created by this court pursuant to Article IV of the Ohio Constitution." *Id.* The court recognized that a grievance is subject to investigation and independent review in order to "separate the wheat from the chaff" before the filing of a formal complaint by the appropriate state authorities. *Id.* at 589. Nevertheless, the court held that the filing and investigation of a grievance was part of a state "judicial proceeding."

Despite this clear statement that judicial proceedings begin with the filing of a grievance, O'Neill argues that *Hecht* is not controlling because it determined that the filing of a grievance begins the judicial process in the context of a lawsuit, not a disciplinary action. We are not persuaded that the different context requires us to disregard *Hecht*'s unambiguous holding. Accordingly, the district court should have refrained from exercising its jurisdiction in this case.

The injunction ordered by the district court is **DISSOLVED**, and the judgment in favor of O'Neill is **VACATED**.

––––––––––––––––––

[2]O'Neill does not challenge the finding that the other two factors supporting *Younger* abstention were present. In *Squire*, an Ohio state court judge filed suit against Coughlan in federal district court, alleging that the disciplinary process deprived her of due process by not revealing all of her accusers' names. The district court dismissed the case *sua sponte* based on *Younger* abstention, and we affirmed. We decided that judicial disciplinary proceedings are state judicial proceedings, qualifying them for *Younger* abstention; that the state has an important interest in attorney and judicial disciplinary proceedings; and that the process affords the accused an adequate opportunity to raise constitutional challenges. *Squire*, 469 F.3d at 556-57.

[3]The disciplinary procedures for judges adopts the procedures used for attorney discipline. "Except as provided in Sections 2(B) and (4) of this rule, complaints and grievances involving alleged misconduct by Justices, judges, and candidates for judicial office . . . shall be brought, conducted, and disposed of in accordance with the provisions of this rule and Gov. Bar. R. V." GOV. JUD. R. II.

**DISSENT**

————————

KAREN NELSON MOORE, Circuit Judge, dissenting. I dissent because I believe that Coughlan waived application of *Younger* abstention and that, even in the absence of this waiver, the facts of the case did not warrant abstention. Coughlan initially argued that O'Neill's claim was not ripe; only after the district court rejected that argument and ruled against Coughlan on the merits of the preliminary injunction did he raise the issue of *Younger* abstention. Although a party to a civil proceeding may raise inconsistent legal arguments, in the instant case Coughlan did not make a ripeness argument and, in the alternative, an argument for abstention. Instead, the sequential timing of Coughlan's motions placed O'Neill in a catch-22. Consider the situation facing future subjects of Ohio's disciplinary proceedings under the precedent set by this case. If plaintiffs seek vindication of their constitutional rights in federal court too early, then their cases will be dismissed for lack of ripeness. If these individuals bring federal suits upon ripening of the claims, then their cases will also be dismissed, this time under the *Younger* abstention doctrine. The majority opinion thus effectively forecloses access to the federal courts for individuals who claim that Ohio's Rules for the Government of the Bar and of the Judiciary are unconstitutional.

I disagree with the majority's interpretation of precedent to require a conclusion that Coughlan did not waive application of *Younger* abstention. The relevant Supreme Court decisions discussing waiver hold that a federal court may raise the issue of *Younger* abstention *sua sponte* and that an explicit expression of the state's desire to submit to federal jurisdiction counsels against abstention. *Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500 n.9 (1984) (observing that: "[t]he New Jersey Attorney General . . . does not, however, press the *Younger* abstention claim before this Court, and instead submits to the jurisdiction of this Court in order to obtain a more expeditious and final resolution of the merits of the constitutional issue"); *Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 480 (1977) (exploring the applicability of *Younger* abstention *sua sponte* and concluding that "[i]f the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system"); *Sosna v. Iowa*, 419 U.S. 393, 396 n.3 (1975) (explaining that the Court had asked the parties to brief the issue of *Younger* abstention and received confirmation that both parties wished a determination on the merits). I agree with O'Neill that these cases "stand merely for the proposition that an express waiver will suffice to dispense with abstention, but [do not] make[] such an express repudiation mandatory." Plaintiff-Appellee Br. at 26. In *Federal Express Corp. v. Tennessee Public Service Commission*, 925 F.2d 962 (6th Cir.), *cert. denied*, 502 U.S. 812 (1991), we found no waiver and applied *Younger* abstention when the state agency "ha[d] persistently argued for abstention," with the exception of one concession at oral argument later retracted in a brief. *Id.* at 967. In contrast, Coughlan had not consistently argued for abstention but rather had made arguments inconsistent with its application. I therefore would affirm the district court's holding that Coughlan had waived application of *Younger* abstention.

Even if Coughlan had not waived application of *Younger* abstention, I do not believe that an ongoing state judicial proceeding existed as required under the first prong of the test set forth in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The Ohio Supreme Court decision in *Hecht v. Levin*, 613 N.E.2d 585 (Ohio 1993), should be limited to the facts of the case, which involved a libel and slander action brought by an attorney against an individual who had filed a complaint regarding the attorney with a local bar association. *Id.* at 586. The Ohio Supreme Court had posed the question in that case narrowly: "We must decide in this case whether filing a grievance with a local bar association is a 'judicial proceeding' within the meaning of *Surace* [an Ohio Supreme Court case holding that statements made in judicial proceedings have immunity against defamation claims]." *Id.* at 588. The court based its holding that statements made in the course of disciplinary proceedings enjoy immunity against defamation claims in large part on public-policy considerations. *Id.* at 589. Accordingly, we should not extend

the holding of *Hecht* to hold that the filing of a grievance initiates a pending judicial proceeding for the purposes of *Younger* abstention. Instead, the facts of the instant case closely resemble those in two Fourth and Fifth Circuit cases, which declined to apply *Younger* abstention. In *Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1228 (4th Cir. 1989), the Fourth Circuit held that *Younger* abstention was not required "where state proceedings were in a preliminary stage and where the state had imposed a prior restraint upon protected speech." In *Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1490 (5th Cir. 1995), the Fifth Circuit followed the logic of *Telco*, when a city Human Relations Commission had issued letters to private clubs regarding complaints filed against them but no other administrative activity had ensued. No Sixth Circuit case is exactly on point regarding the question whether the Disciplinary Counsel's issuing of a letter notifying a judge or attorney of a grievance filed against him or her catalyzes a pending state proceeding for purposes of *Younger* abstention.[1]

In addition, I think that the circumstances of this case do not satisfy the third prong of the *Middlesex* test because the state administrative process did not present O'Neill with an adequate opportunity to argue the constitutional issues related to the complaint against him. As a general matter, a judge or attorney may ultimately raise a constitutional defense to disciplinary proceedings against him or her because the Ohio Supreme Court reviews any determination by the Board of Commissioners that disciplinary action is required. *See* Gov. Bar R. V, § 8; Gov. Jud. R. II, § 5(D); *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 72-73 (2d Cir. 2003), *cert. denied*, 541 U.S. 1085 (2004). Significantly, however, O'Neill filed his federal suit twelve weeks before the Ohio judicial elections. Although O'Neill might have ultimately brought his constitutional arguments before the Ohio Supreme Court, the administrative disciplinary process afforded him no explicit opportunity to do so prior to review by the court.[2] As a result, the administrative process did not offer O'Neill an adequate state forum to raise constitutional issues before the election; in the meantime, the threat of disciplinary action under the Judicial Canons restricted O'Neill's political speech.

Finally, a decision by the district court to abstain under *Younger* would have been undesirable as a matter of judicial policy. In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the U.S. Supreme Court found *Younger* abstention unwarranted in a federal suit brought by individuals claiming a due-process right to a judicial hearing on whether probable cause existed for pretrial detention. *Id.* at 108 n.9. The Court determined that the district court "injunction was not directed

---

[1] The facts in *Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006), can be distinguished. In that case, we found abstention appropriate when the Disciplinary Counsel had completed its investigation and a probable-cause hearing had been set. *Id.* at 554. In the instant case, Ohio disciplinary proceedings were not yet underway at the time O'Neill filed his federal suit. The Disciplinary Counsel had merely issued a mandatory notice letter to O'Neill upon receipt of a grievance. There still existed the possibility that the Disciplinary Counsel might not have found in the course of its investigation substantial evidence of a violation of the Canons of Judicial Ethics. Furthermore, the statement in *Squire* that "a disciplinary proceeding against a judge is ordinarily commenced by the filing of a grievance with the Ohio Disciplinary Counsel," 469 F.3d at 553, is dicta having the sole purpose to describe the start of the judicial grievance process. That a disciplinary proceeding commences with the filing of a grievance, as a descriptive matter, does not mean that a state proceeding is pending for purposes of *Younger* abstention.

[2] In *Squire*, we found that although "there were no explicit instructions in either the Bar Rules or the Judiciary Rules for raising constitutional claims at the precomplaint stage of the process," Judge Squire had not met her burden of proving "that Coughlan would have refused to consider her constitutional challenge." 469 F.3d at 557. The circumstances of O'Neill's case, however, differ from that of *Squire* because O'Neill was a judicial candidate and not simply a judge. The doubt regarding whether the Disciplinary Counsel or, subsequently, the Board of Commissioners might consider O'Neill's constitutional objections made the state disciplinary proceedings an inadequate forum. This situation of uncertainty is a far cry from the right to adjudicate a constitutional issue in a court. Had Coughlan chosen not to consider constitutional issues, O'Neill would have had to wait until review by the Ohio Supreme Court to raise his constitutional defenses. Accordingly, O'Neill would have faced a chilling effect on his speech during a critical pre-election period.

at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution." *Id.* Likewise, the harm in the instant case is not merely the disciplinary action that would accompany a determination that O'Neill violated the Judicial Canons, but also the disciplinary procedures themselves that were conducted twelve weeks prior to the Ohio judicial elections. At a crucial moment in his candidacy, O'Neill suffered irreparable injury because of the chilling effect on his exercise of his First Amendment rights. Just as the plaintiffs in *Gerstein* raised constitutional issues distinct from their defense to their prosecution, so too does the disciplinary proceeding against O'Neill implicate constitutional issues distinct from the question of whether he violated the Judicial Canons. *See Habich v. City of Dearborn*, 331 F.3d 524, 531 (6th Cir. 2003) (finding abstention inappropriate under *Gerstein*); *Flynt v. Leis*, 574 F.2d 874 (6th Cir. 1978) (same), *rev'd on other grounds*, 439 U.S. 438 (1979).

In conclusion, I believe that the district court decision in this case offers a paradigmatic example of the appropriate exercise by a federal court of its equitable jurisdiction when declining to exercise federal court subject-matter jurisdiction would position the plaintiff "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a [disciplinary] proceeding." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

I respectfully dissent.