NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0108n.06

No. 12-1453

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 30, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SYLVIA JAMES, | ) | |
| | ) | |
| *Plaintiff-Appellant,* | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| HILLIARD HAMPTON, THE CITY OF INKSTER, | ) | STATES DISTRICT COURT FOR |
| DAVID JONES, DEBORAH GREEN, PAMELA | ) | THE EASTERN DISTRICT OF |
| ANDERSON, PAUL FISCHER, THE JUDICIAL | ) | MICHIGAN |
| TENURE COMMISSION OF THE STATE OF | ) | |
| MICHIGAN, and VALDEMAR WASHINGTON, | ) | |
| | ) | |
| *Defendants-Appellees.* | ) | |

Before: COLE and GRIFFIN, Circuit Judges; GWIN, District Judge[*]

GWIN, District Judge. Plaintiff-Appellant Sylvia James, a now-former state-court judge, sues the Michigan Judicial Tenure Commission and various state and local officials that removed her from office. She sued in federal court though related matters were then before Michigan administrative bodies and Michigan courts. Citing the then-ongoing state disciplinary proceedings against James, the district court invoked *Younger* and *Burford* abstention and dismissed the lawsuit. The *Younger* and *Burford* doctrines counsel federal courts against interfering with state legal proceedings.

_____

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

While we agree that this case qualifies for *Younger* abstention, we nonetheless reverse the district court's dismissal. Instead of dismissing the case, the district court should have stayed the case until the state proceedings had concluded because James sought money damages in addition to equitable relief. We therefore REVERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.

## I. Factual Background

In this case, James seeks a federal forum to review acts of the Michigan Judicial Tenure Commission (JTC) when it investigated and disciplined her. On September 7, 2010, Hilliard Hampton, the City of Inkster's mayor, and the Inkster City Council hired David Jones, an attorney, to investigate James, who was then a state-district-court judge. In February 2011, after conducting an investigation, Jones filed a grievance with the JTC alleging that James abused her office.

The Michigan Constitution establishes the nine-member JTC to oversee the discipline of Michigan's judiciary. Mich. Const. art. 6 § 30. The Commission includes five judges, two attorneys and two lay persons. *Id.* When the Commission receives a grievance, it "direct[s] that an investigation be conducted to determine whether a complaint should be filed and a hearing held." Mich. Ct. R. 9.207(B). If the Commission files a formal complaint, it then conducts a hearing, which "must conform as nearly as possible to the rules of procedure and evidence governing the trial of civil actions in the circuit court." Mich. Ct. R. 9.211(A). The Michigan Supreme Court may appoint a master to conduct this hearing and issue a report. Mich. Ct. R. 9.210; 9.214.

Upon "[t]he affirmative vote of 5 commission members who have considered the report of the master and any objections" the Commission may recommend to the Michigan Supreme Court

No. 12-1453
*James v. Hampton, et al.*

that a judge be removed from office. Mich. Ct. R. 9.220(A). The Michigan Supreme Court then

> review[s] the record of the proceedings and file[s] a written opinion and judgment, which may accept or reject the recommendations of the commission, or modify the recommendations by imposing a greater, lesser, or entirely different sanction. When appropriate, the Court may remand the matter to the commission for further proceedings, findings, or explication.

Mich. Ct. R. 9.225. Furthermore, "[t]he Supreme Court may, if cause is shown, order that further evidence be taken and added to the original record." Mich. Ct. R. 9.224(E). The Michigan system thus gives the Michigan Supreme Court the ultimate authority over judicial discipline. Importantly, the Michigan system also affords parties the ability to offer additional evidence to the Michigan Supreme Court. *See id*.

On October 26, 2011, the JTC filed a complaint against James. The complaint alleged that James misappropriated public funds, violated various employment provisions governing Michigan's courts, neglected her official duties, and made deceptive statements to the JTC. Retired Judge Ann Mattson served as the Master.

On January 17, 2012, the Master conducted a pretrial hearing, and, on January 23, 2012, a full hearing began.[1] The parties dispute whether the Master stopped James from raising constitutional claims, including the claims that her office safe was searched and that potentially exculpatory materials in that safe were destroyed.[2]

---

[1]Neither party filed with either this Court, or the district court, a complete transcript of the apparently voluminous proceedings before Michigan's judicial system, making our account of events inevitably incomplete.

[2]In particular, they dispute how the following colloquy during the January 23, 2012, hearing should be understood:

No. 12-1453
*James v. Hampton, et al.*

Meanwhile, on January 20, 2012—three days after the preliminary hearing before the Master,

and three days before the full hearing began—James filed this action in the United States District

Court for the Eastern District of Michigan. In six counts, she alleged violations of her constitutional

rights, her right to certain documents, as well as defamation and "political conspiracy." She sought

injunctive relief against the JTC proceedings, as well as damages, attorneys' fees, and costs.

On April 5, 2012, the district court dismissed the case. The court held that *Younger*

abstention, or, in the alternative, *Burford* abstention, required it to refrain from ruling on James's

claims while the state proceedings remained ongoing. This appeal followed.[3]

James argues that the district court should not have dismissed her complaint. She says that

*Younger* and *Burford* abstention are inappropriate because no case was pending in state court when

---

The Master: You wanted to make a request to make a request.
[Plaintiff's counsel]: I wanted to request the opportunity to make a record on the Federal Constitutional Issues, which in this proceeding thus far have not been addressed, and—
The Master: We have talked about that at the bench.
[Plaintiff's counsel]: We have talked about that at the bench, and my understanding is that you have declined to allow me to make that record.
The Master: Yes, I have declined to allow you to make a record about that, but not to make the record that you requested to make.
[Plaintiff's counsel]: Thank you, yes. And that we will end these proceedings on Monday at 1:00 and that—
The Master: At this point, I'll make a further record on that.
[Plaintiff's counsel]: You'll make that. Okay.

James says that this colloquy shows that the state proceedings foreclosed her from presenting her federal claims. Appellees say otherwise.

[3]Meanwhile, on May 27, 2012, the Master finalized her findings, and, on July 31, 2012, the Michigan Supreme Court issued an opinion removing James from office. *See In re James*, 821 N.W. 2d 144 (Mich. 2012).

-4-

she filed this action. Furthermore, she says that the state proceedings did not provide an adequate opportunity to raise her constitutional claims. She also claims that even if abstention was appropriate, the district court should have stayed proceedings rather than dismissing her complaint because she seeks damages in addition to equitable relief.

In response, Appellees Judicial Tenure Commission of the State of Michigan, Paul Fischer, Deborah Green, and Valdemar Washington ("State Defendants") say that the district court correctly found that the criteria for abstention were met. They alternatively argue that Eleventh Amendment immunity protects them from suit. Defendants Hilliard Hampton, the City of Inkster, David Jones, and Pamela Anderson ("Inkster Defendants") likewise say that *Younger* and *Burford* abstention are appropriate. Furthermore, the Inkster Defendants say that James's complaint fails to state a claim upon which relief can be granted, and that *Noerr-Pennington* immunity insulates them from suit for some claims.

## II. Analysis

"*Younger v. Harris* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (citing *Younger v. Harris*, 401 U.S. 37, 44 (1971)). Thus, where a state proceeding deals with issues involved in the federal court suit, the federal court abstains until the conclusion of the state proceeding. A three-part test controls when such abstention is appropriate: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Squire v. Coughlan*, 469

No. 12-1453
*James v. Hampton, et al.*

F.3d 551, 555 (6th Cir. 2006) (internal quotations omitted). We review a district court's decision to abstain de novo. *Id.*

A. *Younger* Abstention

This case falls within this Court's existing *Younger* abstention jurisprudence. We break no new ground to find that when James filed this lawsuit, there were ongoing state judicial proceedings that involved important state interests. We acknowledge some uncertainty regarding whether James was prevented from raising constitutional claims in the January 27, 2012, hearing. But we cannot conclusively determine that, at the time this lawsuit was filed, James would have no adequate opportunity to raise her federal claims at some point during the state proceedings. Accordingly, we agree with the district court that abstention was appropriate.

We evaluate the propriety of a district court's decision to abstain as of the date the lawsuit was filed. *See Fed. Exp. Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991) ("'[T]he proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed.' Under this rule, if a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied.") (quoting *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir.1986)). That is, we consider whether there were ongoing state judicial proceedings, implicating important state interests when James filed her complaint. If so, then abstention is appropriate.

1. "On-going state judicial proceedings"

The proceedings before the Judicial Tenure Commission are "judicial in nature." *Middlesex Cnty.*, 457 U.S. at 433-34; *see also O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008); *Squire*,

-6-

469 F.3d at 555-56. James apparently concedes this point as she does not contest it in her briefing.

Still, James says that the state disciplinary proceeding "was not currently pending when this case was filed." As she would have it, the state proceeding did not begin until January 23, 2012, the date that the JTC complaint hearing on the merits commenced, and three days after she filed this lawsuit.

For *Younger* abstention purposes, state law controls the determination of when the state proceedings began. *See O'Neill*, 511 F.3d at 643. Michigan's Supreme Court has yet to squarely address when Judicial Tenure Commission proceedings begin. But in considering Ohio's judicial regulatory scheme, we explained that "the Ohio Supreme Court has held that the filing of a grievance is the beginning of the judicial process." *Id*. We see no reason to question that result. We agree with the district court that the state proceedings against James began before her January 20, 2012, district-court filing, and most likely with the filing of the JTC's formal complaint on October 26, 2011.[4] Accordingly, we find that the state judicial proceedings were ongoing when James filed this lawsuit.

---

[4]In a rhetorical flourish, James says that "[i]f the mere filing of the JTC's formal complaint was the start of the judicial proceedings for the purposes of *Younger* abstention, Judge James would have had no opportunity to bring her Federal Constitutional claims to the attention of the Federal Court because she did not even know such claims definitively existed until the JTC filed its complaint." Indeed, the point of *Younger* abstention is a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971). *Younger* itself concerned a plaintiff's attempt to enjoin the enforcement of a state statute that he claimed was unconstitutional. James's argument here contests not so much the filing dates, but *Younger*'s third prong, the availability of relief in the state proceedings.

### 2. "Important state interests"

James does not challenge that JTC proceedings involve an important state interest. We have already recognized that a state's interest in disciplining its judges is an "important state interest" for purposes of *Younger* abstention. *Squire*, 469 F.3d at 556. We need not revisit that determination.

### 3. "Adequate opportunity to raise constitutional challenges"

Finally, *Younger* abstention requires that "[a] plaintiff must have 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Squire*, 469 F.3d at 556 (quoting *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 723 (6th Cir. 1993)). That is, "[u]nless state law clearly bars the imposition of the constitutional claims," abstention is appropriate. *Moore v. Sims*, 442 U.S. 415, 425 (1979); *see also Fieger v. Thomas*, 74 F.3d 740, 745 (6th Cir. 1996). And the plaintiff bears the burden of showing that the state procedurally barred the presentation of her claims. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987); *Moore*, 442 U.S. at 432; *Feiger*, 74 F.3d at 746. "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co.*, 481 U.S. at 15. Thus the relevant question is not whether James raised her claims in the state proceeding, but whether state law clearly foreclosed her from so doing at the time she filed this lawsuit. It did not.

Appellant's JTC hearing was required to "conform as nearly as possible to the rules of procedure and evidence governing the trial of civil actions in the Circuit court [of Michigan]." Mich. Ct. R. 9.211(A). Moreover, the Michigan Supreme Court reviews the JTC's findings. On review, "[t]he Supreme Court may, if cause is shown, order that further evidence be taken and added to the

original record. Mich. Ct. R. 9.224(E). Accordingly, we find that James could have raised her federal constitutional claims in the state proceedings either at her JTC hearing or during judicial review of the JTC decision.[5]

James relies on her attorney's January 27, 2012, colloquy with the Master to claim the contrary. She quotes, in particular, the Master's statement, "I have declined to allow you to make a record about that, but not to make the record that you requested to make." Within the context of months of state proceedings, this statement means little. Whatever else may be said of this statement, it does not "*clearly* bar the imposition of the constitutional claims." *Moore*, 442 U.S. at 425 (emphasis added). Indeed moments later, the Master said, "I'll make a further record on that." Accordingly, we cannot conclude that James was completely foreclosed from raising her federal claims in state court when she filed this lawsuit. Since all three conditions for *Younger* abstention were met, the district court properly abstained from reaching the merits of James's complaint.

B. Remedy

While abstention is appropriate, "a federal court's discretion to abstain from exercising jurisdiction does not extend so far as to permit a court to dismiss or remand, as opposed to stay, an action at law." *Superior Beverage Co., Inc. v. Schieffelin & Co.*, 448 F.3d 910, 913 (6th Cir. 2006); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996) ("[F]ederal courts have the

---

[5]We also note that James's briefing in the Michigan Supreme Court suggests not that she was foreclosed from arguing constitutional issues in the Michigan Supreme Court, but instead that she declined to do so. *See* Brief for James, *In re James*, 821 N.W. 2d 144 (Mich. 2012) (No. 143942), 2012 WL 2935926. Yet we leave it to the district court to more fully consider this issue when the state proceedings conclude.

power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."); *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010) ("In the context of a complaint seeking 'both equitable [relief] and money damages,' as in this case, 'a federal court's discretion to abstain from exercising jurisdiction does not extend so far as to permit a court to dismiss or remand, as opposed to stay, an action at law.'") (quoting *Superior Beverage Co.*, 448 F.3d at 913). Instead, "[t]he District Court should stay [the] federal lawsuit to protect against the possibility that [Appellant] could be deprived of the opportunity to present the merits of her damages claims in state court." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075-76 (6th Cir. 1998).

For relief, James seeks an "[a]ward [of] damages, attorneys' fees and costs against the Defendants and in favor of Plaintiff in an amount in excess of $75,000 and to the extent permitted by federal and state law." This monetary demand is sufficient to warrant a stay and not dismissal in this case.

The State Defendants quote *Eidson v. State of Tennessee Department of Children's Services* for the proposition that "a district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." 510 F.3d 631, 638 (6th Cir. 2007) (quoting *Coles v. Granville*, 448 F.3d 853, 866 (6th Cir. 2006)). Taken out of context, this quotation oversimplifies our precedents. *Eidson* actually held that "prerequisite to obtaining any . . . tolling relief . . . is the timely filing of the § 1983 action that will prompt abstention during the pendency of related state proceedings." 510 F.3d at 641. In other words, a party might lose a § 1983 claim if the district court dismisses the proceeding and the statue of limitations then runs during the

course of the ongoing state proceedings.

The above quotation from *Eidson* comes from *Coles v. Granville.* 448 F.3d at 866. *Coles* likewise concerned a considerably more complicated context than the broad discretion State Defendants propose. First, *Coles* relies on *Carroll*. And *Carroll* held that "the District Court should have stayed, not dismissed, Carroll's complaint" because it contained damages claims. 139 F.3d at 1075. Second, *Coles* went on to say that plaintiff "has no injury necessary to make his case ripe for federal review. On this basis alone, the district court's dismissal without prejudice, in lieu of abstention, was not an abuse of discretion." 448 F.3d at 866. Thus, *Coles* is best read in conjunction with our other precedents for the proposition that when a plaintiff's claim is not yet ripe, *Younger* abstention permits dismissal and does not require holding in abeyance.[6] Because Defendants have not argued that James's claims are not ripe, we do not address this argument.

As this Court has said before, "[r]equiring the District Court to stay rather than dismiss damages claims may be an empty formality under the facts of this case." *Carroll*, 139 F.3d at 1075. Admittedly, "[t]he District Court may have nothing left to do but clear the case number off of its

---

[6]Such a reading also comports with *MacDonald v. Village of Northport*, 164 F.3d 964 (6th Cir. 1999). We have previously explained the reach of *MacDonald*,

> This Court affirmed the district court's order dismissing the case because "the *Burford* abstention doctrine and the Eleventh Amendment created 'grounds together' to dismiss [the] case." The *MacDonald* court explicitly recognized that *Quackenbush* held that "a dismissal based on abstention is appropriate only where the relief sought is equitable or otherwise discretionary."

*Superior Beverage Co., Inc. v. Schieffelin & Co.*, 448 F.3d 910, 914 (6th Cir. 2006) (citations omitted) (quoting *MacDonald*, 164 F.3d at 973, 969 n.4).

docket once the state proceedings conclude." *Id*. Yet if James prevails on her claims in the state proceedings, then her action would still be pending, and she would not have to contend with statutes of limitation defenses. *See id*.; *Adrian Energy Assoc. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 425 (6th Cir.2007). These concerns compel us to reverse the district court's judgment and remand the case.

This case illustrates the propriety of this course. The district court, evaluating the state proceedings at an embryonic stage, found that James would have numerous further opportunities to address her constitutional claims in the state proceedings. *See James v. Hampton*, No. 2-10273, 2012 WL 1154303, at *8-9 (E.D. Mich. 2011).[7] By abstaining, it avoided interfering with the state proceedings, assuming instead that the state would give James an opportunity to raise any federal claims. At the conclusion of the state proceedings, with the entirety of the state record in front of it, the district court can evaluate whether James was in fact foreclosed from raising her constitutional claims. It may also find grounds to dismiss the case, such as preclusion. But staying the case, instead of dismissing it, precludes any statute of limitations issues and avoids any difficulties of service.

Moreover, because the district court will evaluate other potential grounds for dismissal on remand, we need not reach them today. Even in abstention cases, "we generally do not reach issues not ruled upon by the district court." *Adrian*, 481 F.3d at 420; *see also Quackenbush*, 517 U.S. at

---

[7]Indeed, to the extent that James alleges violation of her rights under *Cleveland Board. of Education v. Loudermill*, 470 U.S. 532, 541 (1984), these claims may not have been ripe until she was removed from office, which did not occur until after she filed her opening brief in this case.

731. Indeed, because abstention is an abdication of jurisdiction, not an exercise thereof, it would be improper to reach the alternate grounds for affirmance proposed by Appellees. *Cf. Coughlan*, 511 F.3d at 641 ("*Younger* abstention is not a question of jurisdiction, but is rather based on 'strong policies counseling against the exercise of such jurisdiction.'") (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986)).

For similar reasons, we need not consider *Burford* abstention. Our previous decisions abstaining from cases entangled with state judicial disciplinary proceedings against judges rely on *Younger*. *See, e.g.*, *O'Neill*, 511 F.3d at 643; *Squire*, 469 F.3d at 553. There is no reason to depart from that course today. Where abstention is appropriate, both doctrines require a district court to stay a complaint seeking money damages. *See Quackenbush*, 517 U.S. at 731; *Carroll*, 139 F.3d at 1076. This case's disposition would remain the same.

## III. Conclusion

For these reasons, we REVERSE the district court's judgment dismissing the complaint and REMAND for further proceedings consistent with this opinion.